Tara Macomber (SBN 264725)
tara@tmacomberlaw.com
MACOMBER YOCKEY LAW
1 Sansome Street, Suite 3500
San Francisco, CA 94104
Telephone: (415) 227-9955
Facsimile: (415) 946-8801

Attorney for Defendants
Michael Draper and Liliana Draper

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL YOKELL,<br><br>An Individual<br><br>　　　　　　　Plaintiff,<br><br>　　vs.<br><br>HYDROTEC RENEWABLES, INC., a Philippine Corporation, MICHAEL J. DRAPER and LILIANA V. DRAPER, Married Individuals, PINGORA LOAN SERVICING, LLC, and DOES 1 through 25, inclusive<br><br>　　　　　　　Defendants | Case No.: 3:18-cv-02124<br><br>**Removed from the Superior Court of California for the City and County of San Francisco Case No. CGC-18-564283**<br><br>NOTICE OF REMOVAL OF ACTION UNDER 28 U.S.C. § 1441(c) |

Defendants Michael Draper and Liliana Draper (hereinafter "Defendants Draper") hereby remove to the United States District Court for the Northern District of California the above-captioned civil action and all claims and causes of action therein from the superior court of California, County of San Francisco, under 28 U.S.C. § 1441(c). Michael Draper and Liliana Draper make a limited appearance for the purpose of removal only and reserves all rights and defenses.

I.      PROCEDURAL HISTORY

1. On February 13, 2018, Plaintiff Michael Yokell ("Plaintiff") filed a complaint against Defendants Draper and certain other defendants in the Superior Court of California for the City and County of San Francisco, styled Yokell v. Hydrotec Renewables, Inc. et al., Case No. CGC-18-564283 ("State Court Action"). The complaint asserts a claim for Violation of Section 12(a)(2) of the Federal Securities Act in addition to ten other causes of action. A copy of the filing is attached as EXHIBIT 1.

II.     BASIS FOR REMOVAL

2. The Court has original jurisdiction over this section 28 U.S.C. § 1331 because the complaint alleges, as Count 11, violation of the The Securities Act of 1933. Thus removal is based on a claim "arising under" federal law.

3.   This Court has supplemental jurisdiction over Counts I, 2, 3, 4, 5, 6, 7, 8, 9 and 10 of this action because these counts are so related to Count 11 that they form part of the same case or controversy under Article III of the Untied States Constitution. See 28 U.S.C. § 1367.

4.   Defendants may remove the action to this Court under 28 U.S.C. § 1441.

III.    VENUE

5.   Plaintiff's State Court Action is pending in the Superior Court of California for the City and County of San Francisco, which is within this judicial district and division 289 U.S.C. § 84(a). The Untied States District Court for the Northern

District of California is, therefore, the proper venue for removal. 28 U.S.C. § 1446(a).

IV.    TIMELINESS

6.  Plaintiff appears to have served a copy of the summons and complaint on the Liliana Drapers on March 1, 2018 (EXHIBIT 2) by substitute service with mailing on March 1, 2018. Defendant sought removal within 40 days of such date (30 days for the removal with an addition 10 days for substitute service.) Accordingly, this notice of removal is timely filed. 28 U.S.C. § 1446(b) ("The notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise.")

V.    JOINDER OF DEFENDANTS IN NOTICE OF REMOVAL

7. Draper defendants are joined in this removal. No other defendants need be joined in this removal under 28 U.S.C. section 1441(c)(2) stating in pertinent part: "Only defendants against whom a claim described in paragraph (1)(A) has been asserted are required to join in or consent to the removal under paragraph (1). Section 11 of the complaint, "Violation of The Securities Act of 1933" is only against Defendant Draper.

VI.    NOTICE

7.  As required by 28 U.S.C. § 1446(d), Defendants Draper are serving written notice of this notice of removal on Plaintiff and filing a copy of it with the clerk of the Superior Court of the State of California for the City and County of San Francisco.

Dated this April 8, 2018

Respectfully submitted,

Macomber Yockey Law

Tara J. Macomber
Attorney for Defendants



# EXHIBIT 1

To Notice of Removal

ORIGINAL

**SUM-100**

## SUMMONS
### (CITACION JUDICIAL)

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
HYDROTEC RENEWABLES, INC., a Philippine Corporation,
MICHAEL J. DRAPER and LILIANA V. DRAPER, Married Individuals,
Additional Parties Attachment form is attached.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
MICHAEL YOKELL, An Individual,

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO<br>400 McAllister St., Room 103, San Francisco, CA 94102-4514 | CASE NUMBER:<br>*(Número del Caso):*<br>CGC-18-564285 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
David M. Zeff (Bar # 63289)
Law Offices of David M. Zeff
1100 Larkspur Landing Circle #200, Larkspur, CA 94939

Fax No.: (415) 923-1382
Phone No.: (415) 923-1380

| | | | |
|---|---|---|---|
| DATE:<br>*(Fecha)* | FEB 1 3 2018 | CLERK OF THE COURT | Clerk, by<br>*(Secretario)* MEREDITH GRIER , Deputy<br>*(Adjunto)* |

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citación use el formulario Proof of Service of Summons, (POS-010)).*

[SEAL]

**NOTICE TO THE PERSON SERVED:** You are served
1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify):*

3. ☐ on behalf of *(specify):*

    under: ☐ CCP 416.10 (corporation)      ☐ CCP 416.60 (minor)
          ☐ CCP 416.20 (defunct corporation) ☐ CCP 416.70 (conservatee)
          ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
          ☐ other *(specify):*
4. ☐ by personal delivery on *(date):*

| | | |
|---|---|---|
| Form Adopted for Mandatory Use<br>Judicial Council of California<br>SUM-100 [Rev. July 1, 2009] | **SUMMONS** | Page 1 of 1<br>Code of Civil Procedure §§ 412.20, 465<br>www.courtinfo.ca.gov |

*LexisNexis® Automated California Judicial Council Forms*

SUM-200(A)

| SHORT TITLE: | CASE NUMBER: |
|---|---|
| YOKELL v. HYDROTEC, et al. | |

## INSTRUCTIONS FOR USE

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

List additional parties *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff    ☒ Defendant    ☐ Cross-Complainant    ☐ Cross-Defendant

PINGORA LOAN SERVICING, LLC, and DOES 1 through 25, inclusive,

Page  2  of  2

Page 1 of 1

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

*LexisNexis® Automated California Judicial Council Forms*

ORIGINAL

1  David M. Zeff (SB# 63289)
   Law Offices Of David M. Zeff
2  1100 Larkspur Landing Circle, Suite 200
   Larkspur, CA 94939
3  Tel: (415) 923-1380
   Fax: (415) 923-1382
4  dmz@zefflaw.com

5  Attorneys for Plaintiff
   MICHAEL YOKELL

6

7

8

**F I L E D**

San Francisco County Superior Court

FEB 13 2018

CLERK OF THE COURT

BY: _____
                          Deputy Clerk

FILED BY FAX

9      **SUPERIOR COURT OF THE STATE OF CALIFORNIA**
10                 **COUNTY OF SAN FRANCISCO**
                   **UNLIMITED CIVIL CASE**

11  MICHAEL YOKELL,                        )  Case No. **CGC-18-564285**
12  An Individual,                         )
                         Plaintiff,        )  **COMPLAINT FOR DAMAGES**
13                                         )
                                           )  1. **Breach of Promissory Note**
14       v.                                )  2. **Money Lent And Paid Out**
                                           )  3. **Breach of Guaranty**
15                                         )  4. **Judicial Foreclosure**
    HYDROTEC RENEWABLES, INC.,             )  5. **Violation of Cal.Corp.Code Sec.**
16  a Philippine Corporation , MICHAEL J.  )     **25110**
    DRAPER and LILIANA V. DRAPER,          )  6. **Violation of Cal.Corp. Code Sec.**
17  Married Individuals, PINGORA LOAN      )     **25401**
    SERVICING, LLC,  and DOES 1            )  7. **Violation of Cal.Corp. Code Secs.**
18  through 25, inclusive,                 )     **25210 and 25501.5.**
                                           )  8. **Financial Elder Abuse**
19                                         )  9. **Fraud**
              Defendants.                  )  10. **Violation of Cal. Investment**
20                                         )      **Advisers Code**
                                           )  11. **Violation of Section 12(a)(2) of**
21                                         )      **The Securities Act of 1933**
                                           )
22                                         )
                                           )
23  _____)

24          Plaintiff alleges the following upon personal knowledge as to himself and his own

25  acts, and as to all other matter upon information and belief, based upon the investigation

26  made by and through his attorneys.

27                           <u>JURISDICTION AND VENUE</u>

28  1.      Plaintiff Michael D. Yokell ("Yokell" or "Plaintiff") is a natural person who is a

| Page 1 of 30 | **COMPLAINT FOR DAMAGES AND FORECLOSURE** | *Law Offices of David M. Zeff*<br>*1100 Larkspur Landing Circle #200*<br>*Larkspur, CA 94939*<br>*Tel: 415 923 1380* |
|---|---|---|

1  citizen of Colorado, over the age of 18 years and a resident of Boulder, Colorado.

2  Plaintiff was born on November 21, 1946 and was sixty-eight (68) years old at the time

3  of the first events alleged in this complaint.   Plaintiff is an elder as defined by Welfare

4  and Institutions Code Section 15610.27. Plaintiff is now a person over the age of seventy

5  (70) years and is entitled to preference in the setting of cases pursuant to Code of Civil

6  Procedure Section 36.

7  2.      Hydrotec Renewables, Inc. ("Hydrotec") is a corporation organized and existing

8  under Philippine law, with its principal place of business in Manila, Philippines.

9  3.      Defendant Michael J. Draper is a natural person who is a citizen of California,

10  over the age of 18 years and a resident of the City and County of San Francisco,

11  California.

12  4.      Defendant Liliana V. Draper is a natural person who is a citizen of California, over

13  the age of 18 years and a resident of the City and County of San Francisco, California.

14  5.      Pingora Loan Servicing, LLC, is a Limited Liability Company, organized under

15  the law of the State of Delaware and registered with the California Secretary of State to

16  do business in the State of California. Plaintiff is informed and believes that Pingora

17  Loan Servicing, LLC is the current owner of the First Deed of Trust upon the property for

18  which judicial foreclosure is sought in this proceeding.

19  6.      The true names and capacities of Defendants named herein as Does 1 through 20,

20  inclusive, whether individual, corporate, associate or otherwise are unknown to Plaintiff,

21  who therefore sues said Defendants by fictitious names pursuant to California Code of

22  Civil Procedure Section 474. Plaintiff will amend this Complaint to show such true

23  names and capacities of Does 1 through 25, inclusive, when they have been determined.

24  7.      At all times mentioned, each defendant was an agent, servant, employee, partner,

25  joint venturer of each and every other defendant and was acting within the course and

26  scope of the agency, employment, service, subsidiary relationship, partnership,

27  membership, association, contractual, representative relationship, or conspiracy.  Further,

28  some or all of the acts herein alleged were performed with the knowledge and consent of

| Page 2 of 30 | COMPLAINT FOR DAMAGES AND FORECLOSURE | Law Offices of David M. Zeff<br>1100 Larkspur Landing Circle #200<br>Larkspur, CA 94939<br>Tel: 415 923 1380 |
|---|---|---|

1    their respective principals, employers, masters, parent corporations, partners, members,
2    associates, representatives, or conspirators and were approved of, and ratified by
3    Defendants.
4    8.    This Court has jurisdiction over this action in that the Drapers are residents of the
5    State of California, County of San Francisco, the conduct alleged herein against the
6    Drapers occurred substantially in the County of San Francisco, the real property owned
7    by the Drapers subject to a security interest to be foreclosed upon herein is located in the
8    County of San Francisco, Hydrotec has agreed in the Promissory Note subject to this
9    litigation, at Paragraph 14,  that any action to enforce said Promissory Note shall be
10   brought in the Courts of San Francisco, California, in the Contract Hydrotec irrevocably
11   submitted to the exclusive jurisdiction of the Courts of San Francisco, California., and
12   waived any objection which it may have at any time to the laying of venue here, and
13   consented to service of process by any means authorized by California law.
14   9.    Venue is proper in this Court in that the Drapers are residents of the State of
15   California, County of San Francisco, the conduct alleged herein against the Drapers
16   occurred substantially in the County of San Francisco, the real property owned by the
17   Drapers subject to a security interest to be foreclosed upon herein is located in the County
18   of San Francisco, Hydrotec has agreed in the Promissory Note subject to this litigation, at
19   Paragraph 14,  that any action to enforce said Promissory Note shall be brought in the
20   Courts of San Francisco, California, and Hydrotec waived any objection which it may
21   have at any time to the laying of venue in this Court.

22                          SUBSTANTIVE ALLEGATIONS
23   10.   Plaintiff realleges and incorporates by reference paragraphs 1 through 9 of this
24   Complaint as though set forth in full herein.
25   11.   In early 2015, Plaintiff saw an advertisement in the Wall Street Journal placed by
26   Defendant Michael J. Draper soliciting an investment in a small-scale hydroelectric
27   development company in the Philippines named Hydrotec Renewables, LLC.
28   ///

| Page 3 of 30 | COMPLAINT FOR DAMAGES AND FORECLOSURE | *Law Offices of David M. Zeff*<br>*1100 Larkspur Landing Circle #200*<br>*Larkspur, CA 94939*<br>*Tel: 415 923 1380* |

1    12.    Responding to the advertisement, Plaintiff called the telephone number in the ad

2    and spoke with Defendant Michael J. Draper who stated that he was "fund raising" for

3    Defendant Hydrotec.

4    13.    During this conversation, Plaintiff informed Defendant Michael J. Draper that he

5    was interested in investing in the company but could not do so without some security

6    located in the United States.

7    14.    Later in 2015, Plaintiff received an unsolicited telephone call from Defendant

8    Michael J. Draper.  Mr. Draper requested that Plaintiff reconsider making an investment

9    in Hydrotec.  As an inducement to invest, Defendant Michael J. Draper offered a second

10   deed of trust on a San Francisco home that he owned jointly with his wife Liliana.

11   15.    At the time of his conversations and communications with Plaintiff in the summer

12   of 2016, Defendant Michael J. Draper was a registered representative and financial

13   advisor for Equinox Securities, Inc., and registered representative with FINRA.  As a

14   registered representative, Defendant Michael J. Draper was well familiar with the laws

15   and regulations governing the solicitation and sale of securities.

16   16.    Equinox Securities, Inc. was a FINRA member firm until it was expelled by

17   FINRA in May 11, 2016.

18   17.    Defendant Michael J. Draper served as a financial advisor and securities agent for

19   Plaintiff in connection with Plaintiff's decision to invest money to Defendant Hydrotec.

20   Plaintiff relied upon Defendant Michael J. Draper's advice and information in making his

21   decision to lend money to Hydrotec.

22   18.    After his discussions with Defendant Michael J. Draper, Plaintiff agreed to invest

23   $400,000 in the form of a loan to Hydrotec in exchange for (1) a .75% equity interest in a

24   Hydrotec project known as the Bunga Project, (2) a Promissory Note signed by Hydrotec

25   and (3) a Guaranty from Defendants Michael J. Draper and Liliana V. Draper.  The

26   Guaranty was secured in part by a Deed of Trust on Defendants Michael J. Draper and

27   Liliana V. Draper's house in San Francisco.  As part of the Guaranty, the Drapers waived

28   their Homestead rights in their home.

| Page 4 of 30 | COMPLAINT FOR DAMAGES AND FORECLOSURE | Law Offices of David M. Zeff 1100 Larkspur Landing Circle #200 Larkspur, CA 94939 Tel: 415 923 1380 |

19.     The Promissory Note promised that an annual interest rate of 12.75% would be paid to Plaintiff.

20.     The Promissory Note and Guaranty contained provisions that stated that California law would govern their terms and that the venue for all disputes regarding the agreements/transaction would be a California court located in San Francisco, California. The Promissory Note also contains an attorneys' fees provision entitling Plaintiff to recover attorneys' fees and costs in the event of a dispute.

21.     For the initial payments, Hydrotec forwarded the funds into Defendant Michael J. and Liliana Draper's Chase Bank Joint Account and the Drapers would deposit each payment due into Plaintiff's account at Charles Schwab & Co., Inc.

22.     In June 2016, Defendant and Michael J. Draper solicited Plaintiff to invest additional money in Hydrotec.  Defendant Michael J. Draper advised Plaintiff to increase his investment in Hydrotec by $50,000.  Defendant Michael J. Draper represented to Plaintiff that the additional $50,000 was needed, among other things, to keep Hydrotec's 37 employees on staff.

23.     In response to Defendant Michael J. Draper's advice and solicitation, on August 31, 2016 Plaintiff invested another $50,000 in Hydrotec.  As part of this investment Plaintiff was granted another 0.25% ownership in the Bunga Project, making his total ownership interest 1% of the Bunga Project.

24.     Concurrent with the investment of this additional $50,000, Plaintiff and Defendant Hydrotec entered into a new Promissory Note entitled "Amended and Restated Secured Promissory Note" (hereinafter "The NOTE").  The NOTE superseded the Original Promissory Note and created a new debt obligation in the amount of $450,000.  A true and correct copy of the NOTE is attached hereto as **Exhibit 1**.

25.     The NOTE provides that Defendant Hydrotec promises to pay to Plaintiff the principal sum of $450,000 together with interest on the unpaid principal balance from the date of the Note until paid with interest at the rate of 12.75% per annum on the sum of $400,000 and 14% on the sum of $50,000.  The NOTE also provides at Par. 9.e) for a fee

| Page 5 of 30 | **COMPLAINT FOR DAMAGES AND FORECLOSURE** | *Law Offices of David M. Zeff*<br>*1100 Larkspur Landing Circle #200*<br>*Larkspur, CA 94939*<br>*Tel: 415 923 1380* |
| --- | --- | --- |

1    of five percent (5%) of the principal amount due and owing to be paid to Lender at his

2    option upon default, and a post default interest rate of 18%. The entire unpaid principal

3    and all unpaid interest was due and payable in full on March 8, 2017.

4    26.    Concurrently with the NOTE, Plaintiff and Defendants Michael J. Draper and

5    Liliana V. Draper entered into an Amended and Restated Absolute Secured Guaranty of

6    Payment of Amended and Restated Note ("the Guaranty")  A true and correct copy of the

7    Guaranty is attached hereto as **Exhibit 2**.  The Guaranty was secured by an Amended and

8    Restated Deed of Trust (hereinafter "the Deed of Trust") on real property owned by the

9    Drapers known as 1227 37th Avenue, San Francisco, California.  A true and correct copy

10   of the Deed of Trust is attached hereto as **Exhibit 3**.

11   27.    Hydrotec failed to pay to Plaintiff the interest payment due on March 1, 2017 and

12   Hydrotec reneged upon and entirely failed to pay the principal payment of $450,000 due

13   on March 8, 2017.  The Note is now in default.

14   28.    On or about March 9, 2017, Plaintiff gave Hydrotec  notice of the default of the

15   interest payment and notice of the default of the principal payment.

16   29.    Following Hydrotec's breach of the Amended and Restated Secured Promissory

17   Note and the Draper's breach of the Amended and Restated Absolute Secured Guaranty

18   of Payment of Amended and Restated Note, Plaintiff retained counsel who conducted an

19   investigation into Defendant Michael J. Draper's background.

20   30.    In April 2017, Plaintiff discovered for the first time that FINRA disciplined

21   Defendant Michael J. Draper by suspending him from FINRA for a period of time and

22   fining him $5,000.

23   31.    FINRA's disciplinary action in suspending and fining Defendant Michael J.

24   Draper was the result of Mr. Draper's willful failure to disclose to FINRA that he had

25   federal and California tax liens of approximately $740,000.

26   32.    Defendant Michael J. Draper never disclosed to Plaintiff that he had tax liens of

27   any amount assessed against him.

28   ///

| Page 6 of 30 | **COMPLAINT FOR DAMAGES AND FORECLOSURE** | *Law Offices of David M. Zeff*<br>*1100 Larkspur Landing Circle #200*<br>*Larkspur, CA 94939*<br>*Tel: 415 923 1380* |
| --- | --- | --- |

33.     Plaintiff would never have made a loan or investment in Hydrotec or entered into the Promissory Notes and Guaranty Agreement had he known of Defendant Michael J. Draper's tax liens.

34.     Upon information and belief, Defendant Michael J. Draper was not registered as a securities agent or broker-dealer with the State of California's Department of Business Oversight at the time he entered into the first Promissory Note or at the time he entered into the Amended and Restated Secured Promissory Note and the Amended and Restated Absolute Secured Guaranty of Payment of Amended and Restated Note.

35.     In April 2017, Plaintiff discovered that Defendant Michael J. Draper was not registered as a securities agent or broker-dealer with the State of California's Department of Business Oversight at the time he entered into the first Promissory Note or at the time he entered into the Amended and Restated Secured Promissory Note and the Amended and Restated Absolute Secured Guaranty of Payment of Amended and Restated Note.

36.     Plaintiff would not have entered into the Secured Promissory Note or the Absolute Secured Guaranty of Payment of Note had he known that Defendant Michael J. Draper was not licensed as a securities agent with the California Department of Business Oversight.

37.     Upon information and belief, Defendant Michael J. Draper was not registered as a investment adviser with the State of California's Department of Business Oversight at the time he entered into the first Promissory Note or at the time he entered into the Amended and Restated Secured Promissory Note and the Amended and Restated Absolute Secured Guaranty of Payment of Amended and Restated Note.

38.     In April 2017, Plaintiff discovered that Defendant Michael J. Draper was not registered as an investment adviser with the State of California's Department of Business Oversight at the time he entered into the first Promissory Note or at the time he entered into the Amended and Restated Secured Promissory Note and the Amended and Restated Absolute Secured Guaranty of Payment of Amended and Restated Note.

///

| Page 7 of 30 | COMPLAINT FOR DAMAGES AND FORECLOSURE | Law Offices of David M. Zeff<br>1100 Larkspur Landing Circle #200<br>Larkspur, CA 94939<br>Tel: 415 923 1380 |
| --- | --- | --- |

39.     Plaintiff would not have entered into the Amended and Restated Secured Promissory Note or the Amended and Restated Absolute Secured Guaranty of Payment of Amended and Restated Note had he known that Defendant Michael J. Draper was not licensed as an investment adviser with the California Department of Business Oversight.

40.     Under the Securities Act of 1933 and the California Corporations Code, the Promissory Notes issued to Plaintiff in exchange for his investments/loans to Defendant Hydrotec are "securities."

41.     The securities offered and sold to Plaintiff were not registered under the Securities Act of 1933 or the California Department of Business Oversight.

42.     In April 2017, Plaintiff discovered for the first time that the securities issued by Hydrotec in the form of promissory notes, were not registered or qualified with the California Department of Business Oversight or the U.S. Securities and Exchange Commission.

43.     Plaintiff would never have made a loan or investment in Hydrotec had he known that the securities offered and sold by Defendants were not registered or qualified with the State of California or the U.S. Securities and Exchange Commission.

44.     None of the Defendants provided any disclosure documents before or after Plaintiff's investments in Hydrotec.  Plaintiff was not provided with any prospectus, private placement memorandum, or subscription agreement relating to the investments.

45.     Defendants' non-disclosure of Defendant Michael J. Draper's tax liens was wrongful and done with intent to deceive and defraud Plaintiff.

46.     Defendants' non-disclosure of the fact that Defendant Michael J. Draper was not registered as a securities agent or broker-dealer with the State of California's Business Department of Business Oversight was wrongful and done with intent to deceive and defraud Plaintiff.

47.     Defendants' non-disclosure of the fact that the securities offered and sold to Plaintiff by Defendants were not registered or qualified with the State of California or the United States Securities and Exchange Commission was wrongful and done with intent to

1   deceive and defraud Plaintiff.

2   48.     Defendants did not disclose other material facts to Plaintiff in connection with

3   their solicitation and acceptance of the loan and/or investment from Plaintiff including

4   the following:

5           a.      the financial condition of Hydrotec including but not limited to, the assets,

6   liabilities, income, and net worth of the company;

7           b.      the risks associated with an investment in or a loan to Hydrotec.;

8           c.      the operating history of Hydrotec;

9           d.      the fact that Michael J. Draper was not licensed as a securities broker-

10  dealer, agent or investment adviser with the State of California; and

11          e.      The fact that the securities were not registered or qualified under California

12  or federal law.

13  49.     Defendants' omissions of material facts, as described above, were wrongful and

14  harmful and exposed Plaintiff to the risk of a loss of the principal of the money he loaned

15  and/or invested with Hydrotec.  Defendants' conduct further involved the risk of non-

16  payment of the interest payments promised to Plaintiff.  Defendants' omissions of

17  material facts were done with the intent to deceive and/or defraud Plaintiff.

18  50.     Defendants' conduct did in fact prove harmful to Plaintiff in that the full amount

19  of his principal and promised interest payments were not paid to him.

20                          FIRST CAUSE OF ACTION

21                      BREACH OF PROMISSORY NOTE

22                      (Against Defendant Hydrotec)

23  51.     Plaintiff realleges and incorporates by reference paragraphs 1 through 27 of this

24  Complaint as though set forth in full herein.

25  52.     As alleged above, Hydrotec has breached the contract contained in the NOTE by

26  failing to pay the interest and principal due on and after March 8, 2017.

27  53.     Plaintiff has performed all obligations to defendant Hydrotec except those

28  obligations Plaintiff was prevented or excused from performing.

| Page 9 of 30 | **COMPLAINT FOR DAMAGES AND FORECLOSURE** | Law Offices of David M. Zeff 1100 Larkspur Landing Circle #200 Larkspur, CA 94939 Tel: 415 923 1380 |
| --- | --- | --- |

54.     The NOTE at paragraph 8.a) provides that if any payment required is not paid when due, the entire principal amount outstanding and accrued interest thereon shall at once become due and payable at the option of the Lender (Plaintiff), and the indebtedness shall bear interest at the rate of 18% per annum from the date of default.

55.     The NOTE at paragraph 8.a) further provides that in the event of default, Lender shall be entitled to collect all reasonable costs and expense of collection and/or suit, including, but not limited to reasonable attorneys' fees.

56.     Plaintiff suffered damages proximately caused by Hydrotec's breach of the Note as follows:

        a. Unpaid principal now due and unpaid of $450,000, less any payments made on said NOTE to be credited to unpaid principal;

        b. Unpaid interest prior to default according to proof;

        c. Pursuant to the NOTE, Plaintiff is further entitled to recover interest at the rate of 18% per annum on the amount of principal due on the date of default, March 8, 2017, to the date of entry of Judgment; and

        d. Pursuant to the NOTE, Par. 9.e) a fee of five percent (5%) of the principal amount due and owing to Plaintiff.

57.     Pursuant to the NOTE, Plaintiff is entitled to recover his costs and reasonable attorneys' fees incurred.

        Wherefore, Plaintiff prays for Judgment as set forth hereafter.

SECOND CAUSE OF ACTION

MONEY LENT AND PAID OUT (COMMON COUNT)

(Against Defendant Hydrotec)

58.     Plaintiff realleges and incorporates by reference paragraphs 1 through 27 of this Complaint as though set forth in full herein.

59.     Defendant Hydrotec became indebted to Plaintiff within the last four years for money lent by Plaintiff to Defendant Hydrotec at said Defendant's request, and for money paid, laid out, and expended to or for Defendant Hydrotec at said Defendant's

| Page 10 of 30 | **COMPLAINT FOR DAMAGES AND FORECLOSURE** | *Law Offices of David M. Zeff*<br>*1100 Larkspur Landing Circle #200*<br>*Larkspur, CA 94939*<br>*Tel: 415 923 1380* |
|---|---|---|

1   special instance and request.

2   60.    The principal sum of $450,000, which is the reasonable value, is due and unpaid

3   despite Plaintiff's demand, plus pre-default unpaid interest according to proof, plus the

4   late fee of 5% of the then due principal and penalties from March 8, 2017, as agreed upon

5   as the terms of said loan, according to proof.

6   61.    Plaintiff is entitled to attorneys' fees by an agreement (the NOTE), according to

7   proof.

8          Wherefore, Plaintiff prays for Judgment as set forth hereafter.

9                              THIRD CAUSE OF ACTION

10                             BREACH OF GUARANTY

11             (Against Defendants Liliana V. Draper and Michael J. Draper)

12  62.    Plaintiff realleges and incorporates by reference paragraphs 1 through 27 of this

13  Complaint as though set forth in full herein.

14  63.    After breach of the NOTE by Hydrotec, Plaintiff, on or about March 9, 2017,

15  made demand upon Defendants Liliana V. Draper and Michael J. Draper for payment of

16  all sums then due and owing under the NOTE pursuant to the Guaranty.

17  64.    Defendants Liliana V. Draper and Michael J. Draper breached the Guaranty,

18  failing and refusing to pay the interest and principal now past due on the NOTE.

19  65.    Plaintiff has performed all obligations to Defendants Liliana V. Draper and

20  Michael J. Draper, if any there were, except those obligations Plaintiff was prevented or

21  excused from performing.

22  66.    The NOTE at paragraph 8.a) provides that if any payment required is not paid

23  when due, the entire principal amount outstanding and accrued interest thereon shall at

24  once become due and payable at the option of the Lender (Plaintiff) and the indebtedness

25  shall bear interest at the rate of 18% per annum from the date of default.  The NOTE at

26  Par. 9.e) provides for a fee of five percent (5%) of the principal amount due and owing to

27  Plaintiff upon default by the borrower.

28  ///

| Page 11 of 30 | **COMPLAINT FOR DAMAGES AND FORECLOSURE** | Law Offices of David M. Zeff 1100 Larkspur Landing Circle #200 Larkspur, CA 94939 Tel: 415 923 1380 |

67.     The NOTE at paragraphs 8.a) and 9.d) and the Guaranty further provide that in the event of default, Lender shall be entitled to collect all reasonable costs and expense of collection and/or suit, including, but not limited to reasonable attorneys' fees.

68.     Plaintiff now declares the full amount payable under the NOTE and Guaranty and Deed of Trust due, such amount being the principal balance of $450,000, together with pre-default interest, the late fee of five percent (5%) of the principal amount due, the default interest at the rate of 18% per annum from March 8, 2017 to the date of entry of judgment, and other allowable costs as provided under the NOTE and Guaranty.

69.     Pursuant to the Guaranty, Defendants Liliana V. Draper and Michael J. Draper agreed to pay reasonable attorneys' fees and all other reasonable costs and expenses which may be incurred by Plaintiff in the enforcement of the Guaranty or in the collection of the NOTE.

70.     All conditions precedent to the relief demanded herein have been performed, have occurred, or are excused.

        Wherefore, Plaintiff prays for Judgment as set forth hereafter.

## FOURTH CAUSE OF ACTION

### JUDICIAL FORECLOSURE

#### (Against Defendants Michael J. and Liliana V. Draper)

71.     Plaintiff realleges and incorporates by reference paragraphs 1 through 27 of this Complaint as though set forth in full herein.

72.     This cause of action is to foreclose on the Deed of Trust alleged in paragraph 26 and attached hereto as **Exhibit 3**.

73.     On July 1, 2017, Defendants Liliana V. Draper and Michael J. Draper executed and delivered the Deed of Trust securing Hydrotec's payment of the NOTE to Plaintiff, which Deed of Trust encumbered the property described therein, then owned by and in possession of the Drapers and which was recorded on July 6, 2016, in the Official Record Book of the San Francisco Assessor-Recorder as DOC 2016-K282840-00.

74.     Plaintiff is the owner and the holder of the NOTE and Deed of Trust for value.

| Page 12 of 30 | **COMPLAINT FOR DAMAGES AND FORECLOSURE** | *Law Offices of David M. Zeff*<br>*1100 Larkspur Landing Circle #200*<br>*Larkspur, CA 94939*<br>*Tel: 415 923 1380* |
|---|---|---|

75.     The encumbered property is now owned by and in possession of Defendants Liliana V. Draper and Michael J. Draper.

76.     The NOTE provides that, should a default occur in the payment of any installment when due, or in the performance of any obligation in the trust deed securing payment of the note, the whole sum of principal and interest shall become immediately due at the election of the holder of the note and shall, at the election of the holder, there is a late fee of five percent (5%) of the principal amount due, and the unpaid balance shall bear interest during the period of the default at the rate of 18 percent per annum. The Deed Of Trust provides that, should a default occur in the payment of any debt secured by the Deed Of Trust, or in the performance of any obligation in the Note or Deed Of Trust, all sums secured by the Deed Of Trust  shall, at the election of the beneficiary, become immediately due and payable.

77.     Plaintiff now declares the full amount payable under the NOTE, Guaranty and Deed of Trust due, such amount being the principal balance of $450,000, together with pre-default interest, default interest at the rate of 18% per annum from March 8, 2017 to the date of entry of judgment, title search expenses for ascertaining necessary parties to this action, and other allowable costs as provided under the NOTE and Guaranty.

78.     Pursuant to the Guaranty and Deed of Trust, Defendants Liliana V. Draper and Michael J. Draper, have agreed to pay reasonable attorneys' fees and all other reasonable costs and expenses which may be incurred by Plaintiff in the enforcement of the Guaranty or in the collection of the NOTE.  By reason of the above-mentioned defaults by Defendants Liliana V. Draper and Michael J. Draper, it has become necessary for Plaintiff to employ The Law Offices of David M. Zeff, The Law Offices of Cary S. Lapidus, and The Law Offices of Marc. D. Stolman, all attorneys at law duly licensed to practice in all the courts of the State of California, to commence and prosecute this foreclosure action.

79.     All conditions precedent to the relief demanded herein have been performed, have occurred or are excused.

| Page 13 of 30 | **COMPLAINT FOR DAMAGES AND FORECLOSURE** | *Law Offices of David M. Zeff*<br>*1100 Larkspur Landing Circle #200*<br>*Larkspur, CA 94939*<br>*Tel: 415 923 1380* |
|---|---|---|

1  Wherefore, Plaintiff prays for Judgment as set forth hereafter.

2  ## FIFTH CAUSE OF ACTION

3  ### OFFER AND SALE OF UNQUALIFIED, NON-EXEMPT SECURITIES

4  ### IN VIOLATION OF CAL. CORP. CODE SECTION 25110

5  (Against Defendant Michael J. Draper)

6  80.   Plaintiff realleges and incorporates by reference paragraphs 1 through 50 of this

7  Complaint as though set forth in full herein.

8  81.   California Corporations Code Section 25110 provides in pertinent part:

9  It is unlawful for any person to offer or sell in this state any security in an issuer

10  transaction . . . unless such sale has been qualified under Section 25111, 25112 or 25113 .

11  . . or unless such security or transaction is exempted or not subject to qualification under

12  Chapter 1(commencing with section 25100) of this part.

13  82.   The Promissory Notes sold by Defendants to Plaintiff constitute "securities" under

14  California Corporations Code Section 25019 and were required to be qualified under

15  Section 25110 of the California Corporations Code.  Section 25109 of the Code states

16  that:

17  "Security" means any note; stock; treasury stock; membership in an incorporated or

18  unincorporated association; bond; debenture; evidence of indebtedness . . . investment

19  contract . . . interest in a limited liability company . . .

20  83.   The Promissory Notes were issued by Hydrotec and the sale of the Promissory

21  Notes constitute "issuer transactions" within the meaning of Sections 25010 and 25011.

22  84.   The Commissioner has not issued a permit or other form of qualification

23  authorizing the Defendants to offer and sell the securities in the State of California.

24  85.   The offer and sale of these securities are not exempt from the requirement of

25  qualification under Section 25110.

26  86.   Defendant Michael J. Draper offered and sold unqualified, non-exempt securities

27  in violation of Sections 25110, 25120, 25130 or 25133.

28  87.   Defendant Michael J. Draper is liable either as an issuer of the securities, or as a

| Page 14 of 30 | **COMPLAINT FOR DAMAGES AND FORECLOSURE** | *Law Offices of David M. Zeff*<br>*1100 Larkspur Landing Circle #200*<br>*Larkspur, CA 94939*<br>*Tel: 415 923 1380* |
|---|---|---|

person identified in California Corporations Code Sections 25504, 25504.1, 25403(b) or as a control party, executive officer or director or one who occupies a similar status or performs a similar function, as an agent who materially aides, an aider and abettor of the issuer's wrongful acts providing substantial assistance and acting with an intent to deceive.

88.     Pursuant to Cal. Corp. Code Section 25503, Plaintiff may recover the consideration paid for the security plus pre- and post- judgment interest at the statutory rate, less any payments actually received Plaintiff.  Plaintiff hereby offers to tender his Promissory Notes back to Defendants.

89.     Plaintiff suffered damages as a result of Defendants' violations.

90.     By reason of the foregoing, Defendant Michael J. Draper violated Section 25110 of the California Corporations Code and is liable to Plaintiff under Section 25503 of the Code.

91.     By reason of the foregoing, Defendants are jointly and severally required to restore all consideration paid for the Promissory Notes, plus interest at the legal rate, or damages.

92.     Plaintiff did not know, or in the exercise of reasonable diligence could not have known, or understood that the Promissory Notes were required to be qualified with the California Department of Business Oversight.

93.     Plaintiff has brought this action within the earlier of one year after the discovery of the facts constituting the unlawful offering and sale of the unqualified securities to Plaintiff and within two years after the date of the violation upon which this claim is based.

94.     The claims herein are based on strict liability and are not based in any way on fraud or fraudulent conduct.

        Wherefore, Plaintiff prays for Judgment as set forth hereafter.

///

///

| Page 15 of 30 | **COMPLAINT FOR DAMAGES AND FORECLOSURE** | *Law Offices of David M. Zeff*<br>*1100 Larkspur Landing Circle #200*<br>*Larkspur, CA 94939*<br>*Tel: 415 923 1380* |
|---|---|---|

## SIXTH CAUSE OF ACTION

### MISREPRESENTATION OR OMISSION OF MATERIAL FACTS IN VIOLATION
### OF SECTION 25401

(Against Defendant Michael J. Draper)

95.     Plaintiff realleges and incorporates by reference paragraphs 1 through 50 of this Complaint as though set forth in full herein.

96.     The Promissory Notes sold to Plaintiff were securities under Cal. Corp. Code Section 25019.

97.     The exchange of money for a Promissory Note created a debt interest security that is a security under Cal. Corp. 25019.

98.     The securities sold to Plaintiff were sold in, within or from California.

99.     California Corporations Code Section 25401 provides as follows:

"It is unlawful for any person to offer or sell a security in this state or buy or offer to buy a security in this state by means of any written or oral communication which includes an untrue statement of material fact or omits to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading."

100.    In connection with the offer and sale of securities, Defendant Michael J. Draper, directly and indirectly made untrue statements of material fact and omitted to state material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading, in violation under Cal. Corp. Code Section 25401, including but not limited to the misrepresentations and omissions set forth herein.

101.    In offering and selling securities in this State, Defendant Michael J. Draper omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, to Plaintiff. The misrepresentations included, without limitation, the following:

        a.      Defendant Michael J. Draper omitted to inform Plaintiff of the risks associated with the investment in Hydrotec despite the highly speculative nature of the

| Page 16 of 30 | **COMPLAINT FOR DAMAGES AND FORECLOSURE** | *Law Offices of David M. Zeff*<br>*1100 Larkspur Landing Circle #200*<br>*Larkspur, CA 94939*<br>*Tel: 415 923 1380* |
|---|---|---|

investment.

b.   Defendant Michael J. Draper told Plaintiff that he would not lose money and that he would "guarantee" that he would "get paid back" their investment funds and interest through the second Deed of Trust on his home.

c.   Defendant Michael J. Draper misrepresented that Plaintiff would receive regular monthly interest payments.

d.   Defendant Michael J. Draper misrepresented that Plaintiff would receive a return of his investment principal at the end of the investment term.

e.   Defendant Michael J. Draper omitted to inform Plaintiff of the risks associated with the investment in Hydrotec, despite the highly speculative nature of the investment.

f.   Defendant Michael J. Draper did not disclose that the Promissory Notes were required to be registered under California law.

g.   Defendant Michael J. Draper did not disclose that he was required to be registered as an investment adviser and securities broker/dealer or agent under California law.

102.   The misstatements and omissions referred to herein were "material facts" within the meaning of Corporations Code Section 25401 since they concerned matters which a "reasonable investor" would consider in deciding whether to invest.

103.   Defendants Michael J. Draper's misrepresentations and omissions were "in connection with" the offer and sale of securities within the meaning of Corporations Code Section 25401.

104.   Some or all of Defendants' misrepresentations and omissions of material fact took place" within the state" of California within the meaning of Corporations Code Section 25008.

105.   Defendant Michael J. Draper knowingly and substantially assisted others in securities law violations in the manner and for the reasons set forth herein.  Defendant Michael J. Draper's actions were done with the intent to induce the Plaintiff's reliance on

| Page 17 of 30 | **COMPLAINT FOR DAMAGES AND FORECLOSURE** | Law Offices of David M. Zeff 1100 Larkspur Landing Circle #200 Larkspur, CA 94939 Tel: 415 923 1380 |
|---|---|---|

1  knowing misrepresentations or omissions, and such actions and misrepresentations
2  materially assisted in securing the investment.

3  106.   Defendant Michael J. Draper's actions were done with the intent to induce the
4  Plaintiff's reliance on knowing misrepresentations or omissions, and such actions and
5  misrepresentations materially assisted in securing the investment.

6  107.   Defendant Michael J. Draper is liable either as an issuer of the securities, or as a
7  person identified in California Corporations Code Sections 25504, 25504.1, 25403(b), or
8  as a control party, executive officer or director or one who occupies a similar status or
9  performs a similar function, as an agent who materially aides, an aider and abettor of the
10  of the issuer's wrongful acts providing substantial assistance and acting with an intent to
11  deceive.

12  108.   Accordingly, pursuant to Cal. Corp. Code Sections 25501 and 25504.1, Defendant
13  Michael J. Draper is liable to Plaintiff who may recover the consideration paid for the
14  security plus pre- and post-judgment interest at the statutory rate, less any payments
15  actually received Plaintiff.  Upon return of such consideration, Plaintiff stands ready,
16  willing and able to return the security to the Defendant.

17          Wherefore, Plaintiff prays for Judgment as set forth hereafter.

18                          SEVENTH CAUSE OF ACTION
19      UNLICENSED SALE OF SECURITIES IN VIOLATION OF CAL. CORP. CODE
20                          SECTIONS 25210 and 25501.5
21                      (Against Defendant Michael J. Draper)

22  109.   Plaintiff realleges and incorporates by reference paragraphs 1 through 50 of this
23  Complaint as though set forth in full herein.

24  110.   This Cause of Action is asserted against Defendant Michael J. Draper under
25  Sections 25210 and 25501.5 of the California Corporations Code.

26  111.   California Corporations Code Section 25210 provides in pertinent part:

27          (a)     Unless exempted . . . no broker-dealer shall effect any transaction in, or
28  induce or attempt to induce the purchase or sale of, any security in this state unless the

| Page 18 of 30 | COMPLAINT FOR DAMAGES AND FORECLOSURE | Law Offices of David M. Zeff 1100 Larkspur Landing Circle #200 Larkspur, CA 94939 Tel: 415 923 1380 |
| --- | --- | --- |

broker-dealer has first applied for and secured from the commissioner a certificate, then in effect, authorizing that person to act in that capacity.

(b)     No person shall, on behalf of a broker-dealer licensed pursuant to Section 25211, or on behalf of an issuer, effect any transaction in, or induce or attempt to induce the purchase or sale of, any security in this state unless that broker-dealer and agent have complied with any rules as the commissioner may adopt for the qualification and employment of those agents.

112.   California Corporations Code Section 25004 defines broker-dealer in relevant part as: " . . . any person engaged in the business of effecting transactions in this state for the account of others…"

113.   Beginning in approximately August 2015, Defendant Michael J. Draper has engaged in the business of effecting transactions in securities in California within the meaning of CC Section 25004 for the account of others by offering and selling securities in Hydrotec. As detailed above, since at least in or about August 2015, Defendant Michael J. Draper offered and sold the securities of Hydrotec to Plaintiff within the State of California.  In so doing, Defendant Michael J. Draper acted as a broker-dealer and/or securities agent.

114.   Defendant Michael J. Draper violated Section 25210 of the Code because he did not have, during the period at issue, a broker-dealer certificate or a securities agent certificate from the Commission of the California Department of Business Oversight.

115.   Defendant Michael J. Draper was not exempt from the provisions of Corporations Code Section 25210 requiring broker-dealers or securities agents to obtain a certificate from the Commissioner.

116.   Defendants directly or indirectly controlled other Co-Defendants, by knowingly inducing or by knowingly providing substantial assistance to other Co-Defendants, to act as unlicensed broker dealers and/or unlicensed agents by engaging in the business of effecting transactions in, or inducing or attempting to induce the purchase or sale of securities, in the form of promissory notes, in violation of Corporations Code Section

| Page 19 of 30 | **COMPLAINT FOR DAMAGES AND FORECLOSURE** | *Law Offices of David M. Zeff*<br>*1100 Larkspur Landing Circle #200*<br>*Larkspur, CA 94939*<br>*Tel: 415 923 1380* |
| --- | --- | --- |

25210.

117.    Plaintiff did not know, or in the exercise of reasonable diligence could not have known, or understood that Defendant Michael J. Draper was not a licensed broker-dealer or securities agent with the California Department of Business Oversight or that he did not have certificates issued by the Commissioner, or that such was required.

118.    Pursuant to Section 25506 of the Code, Plaintiff has brought this action within the earlier of (a) two years after the discovery of the facts constituting the violation of Section 25210 of the Code; and (b) within five years after the date of the violation upon which the claim is based.

119.    Alternatively, if Section 25507 of the Code governs the statute of limitations for this Cause of Action, Plaintiff has brought this action within the earlier of: (a) one year after the discovery of the facts constituting the violation of Section 25210 of the Code; and (b) within two years after the date of the violation upon which this claim is based.

120.    Pursuant to California Code of Civil Procedure Section 1029.8 et. seq., Because Defendant Michael J. Draper was required to be licensed and/or possess a broker-dealer certificate from the Commissioner of the Department of Business Oversight, Defendant Michael J. Draper is liable to Plaintiff for treble damages not to exceed $10,000 per each violation and reasonable attorneys' fees and costs, in addition to any damages alleged herein.

121.    Pursuant to Cal. Corp. Code Sections 25501.5(6)(b), Defendant Michael J. Draper is liable to Plaintiff who may recover the consideration paid for the security plus pre- and post-judgment interest at the statutory rate, and attorneys' fees and costs, less any payments actually received Plaintiff.  Upon return of such consideration, Plaintiff stands ready, willing and able to return the security to the Defendant.

Wherefore, Plaintiff prays for Judgment as set forth hereafter.

## EIGHTH CAUSE OF ACTION

### (FINANCIAL ELDER ABUSE)

(Against Defendant and Michael J. Draper)

| Page 20 of 30 | **COMPLAINT FOR DAMAGES AND FORECLOSURE** | *Law Offices of David M. Zeff*<br>*1100 Larkspur Landing Circle #200*<br>*Larkspur, CA 94939*<br>*Tel: 415 923 1380* |
|---|---|---|

122.    Plaintiff realleges and incorporates by reference all allegations of paragraphs 1 through 50, above.

123.    At all relevant times herein, Plaintiff was over the age of 65, and therefore a senior citizen as defined by California Welfare and Institutions Code Section 15610.27.

124.    California's Elder Abuse and Dependent Adult Civil Protection Act, Welfare & Institutions Code (WW&IC") Section 15610.07, et seq., prohibits abuse of an elder. Defendants' wrongful conduct, as alleged above, constitutes violations of the California Elder Abuse and Dependent Adult Civil Protect Act by "financial abuse" of Plaintiffs.

125.    Section 15610.30, subdivision (a) of the Welfare and Institutions Code provides: "(a) 'Financial abuse' of an elder or dependent adult occurs when a person or entity does any of the following:  [¶] (1) Takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.  [¶] (2) Assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both.  [¶] (3) Takes, secretes, appropriates, obtains, or retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult by undue influence, as defined in Section 15610.70."

126.    W&IC Section 15610.30(b) provides: "A person or entity shall be deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates, obtains, or retains the property and the person or entity knew or should have known that this conduct is likely to be harmful to the elder or dependent adult.

127.    W&IC Section 15610.30(c) provides: "For purposes of this section, a person or entity takes, secretes, appropriates, obtains, or retains real or personal property when an elder or dependent adult is deprived of any property right, including by means of an agreement, donative transfer, or testamentary bequest, regardless of whether the property is held directly or by a representative of an elder or dependent adult.

128.    California Civil Code Section 3345 holds an unfair or deceptive practice against

| Page 21 of 30 | **COMPLAINT FOR DAMAGES AND FORECLOSURE** | *Law Offices of David M. Zeff*<br>*1100 Larkspur Landing Circle #200*<br>*Larkspur, CA 94939*<br>*Tel: 415 923 1380* |
| --- | --- | --- |

senior citizens or disabled persons occurs when the defendant's conduct caused a senior or disabled person to suffer loss or encumbrance of a primary residence.

129.    California Civil Code Section 3345 provides that, when a defendant is found liable on any statutory or civil grounds, the trier of fact may impose treble damages if it makes an affirmative finding in regard to one or more of the followings factors:

   a)    The defendant knew or should have known that his conduct was directed to a senior citizen;

   b)    The defendant's conduct caused a senior citizen to suffer: loss of a source of income; substantial loss of property set aside for retirement, or for personal or family care and maintenance; or substantial loss of payments received under a pension or retirement plan or government benefits program, or assets essential to the health or welfare of the senior citizen; or

   c)    The senior citizen was substantially more vulnerable than other members of the public to the defendant's conduct because of age, poor health or infirmity, impaired understanding, restricted mobility, or disability, and actually suffered substantial physical, emotional, or economic damage resulting from the defendant's conduct.

130.    California Welfare and Institutions Code Section 15657 provides that, where it is proven by clear and convincing evidence that a defendant is liable for financial abuse of an elder and that the defendant has been guilty of recklessness, oppression, fraud, or malice in the commission of the abuse, the court shall award to the plaintiff reasonable attorney's fees and costs. California Welfare and Institutions Code Section 15610.30 states that financial abuse of an elder occurs when a person or entity engages or assists in "taking, secreting, appropriating, or retaining real or personal property of an elder . . . to a wrongful use or with intent to defraud, or both."

131.    Defendants took, secreted, appropriated, obtained, or retained Plaintiff's money for a wrongful use or with intent to defraud.  Defendants knew or should have known that such conduct would likely be harmful to Plaintiff.  Defendants' taking and obtaining of Plaintiff's money was harmful to him in that it exposed him to the risk that his principal

| Page 22 of 30 | **COMPLAINT FOR DAMAGES AND FORECLOSURE** | *Law Offices of David M. Zeff*<br>*1100 Larkspur Landing Circle #200*<br>*Larkspur, CA 94939*<br>*Tel: 415 923 1380* |
|---|---|---|

1   would not be repaid in full.   Such harm has actually been suffered by Plaintiff who has
2   not received back from Defendants or any other source the full amount of the principal
3   Defendants obtained from Plaintiffs.

4   132.    As a result of Defendants' actions and inactions alleged above, Defendants have
5   taken, obtained, and retained the money of Plaintiff for a wrongful use or with an intent
6   to defraud him and benefit financially.

7   133.    On information and belief, Defendants acts alleged above were willful, wanton,
8   malicious, and oppressive, were despicable and undertaken with recklessness and/or
9   fraud, with the intent to harm and defraud Plaintiff of his money so as to justify the
10   awarding of exemplary and punitive damages.

11   134.    Pursuant to Welfare and Institutions Code Section 15657, Plaintiff is entitled to
12   recover their attorneys' fees from Defendant.

13   135.    Defendant is liable for treble damages and penalties pursuant to California Civil
14   Code Section 3345 because:  (1) Defendants knew or should have known that their
15   conduct was directed to a senior citizen (Plaintiff); (2) Such conduct caused a senior
16   citizen (Plaintiff) to suffer substantial loss of property set aside for retirement or for
17   personal or family care and maintenance, or assets essential to their health or welfare; and
18   (3) Plaintiff is substantially more vulnerable than other members of the public to such
19   conduct because of their age, and actually suffered economic damage as a result of
20   Defendants' conduct.

21          Wherefore, Plaintiff prays for Judgment as set forth hereafter.

22                          NINTH CAUSE OF ACTION

23                                  FRAUD

24                     (Against Defendant Michael J. Draper)

25   136.    Plaintiff realleges and incorporates by reference paragraphs 1 through 50, of this
26   Complaint as though set forth in full herein

27   137.    Defendant's conduct, as herein alleged, constituted a scheme to defraud Plaintiff.

28   138.    Defendant knew or were reckless in not knowing that his conduct in soliciting a

| Page 23 of 30 | **COMPLAINT FOR DAMAGES AND FORECLOSURE** | *Law Offices of David M. Zeff*<br>*1100 Larkspur Landing Circle #200*<br>*Larkspur, CA 94939*<br>*Tel: 415 923 1380* |

1   loan and/or investment from Plaintiff was wrongful.

2   139.   Defendant's misrepresentations and omissions of material facts as described
3   above, were wrongful and harmful to Plaintiff and allowed Defendant to wrongfully use
4   Plaintiff's money.  Defendant's conduct exposed him to the risk of a loss of the principal
5   of the money he loaned and/or invested with Defendant.  Their conduct further involved
6   the risk of non-payment of the interest payments promised to Plaintiff.  Defendant's
7   omissions of material facts were done with the intent to deceive and/or defraud Plaintiff.

8   140.   Defendant's actions were committed intentionally, willfully, wantonly and with
9   reckless disregard for the rights of Plaintiff.

10  141.   As a result of Defendant's scheme, Plaintiff has sustained damages as herein
11  alleged.

12  142.   By virtue of the foresaid, because of Defendant's callousness toward Plaintiff, and
13  wanton disregard for Plaintiff's rights and welfare, and in that the actions of the
14  Defendant rises to the level of fraud, an assessment of punitive damages in a sum
15  according to proof at trial, is justified and appropriate   Defendant acted despicably and
16  with recklessness, oppression, and malice.

17          Wherefore, Plaintiff prays for Judgment as set forth hereafter.

18                          TENTH CAUSE OF ACTION

19          (VIOLATIONS OF CALIFORNIA INVESTMENT ADVISORS CODE)

20                      (Against Defendant Michael J. Draper)

21  143.   Plaintiff realleges and incorporates by reference paragraphs 1 through 50 of this
22  Complaint as though set forth in full herein

23  144.   At all times pertinent to this Complaint, Defendant Michael J. Draper acted as
24  though he were, an investment advisor and a broker-dealer with extensive trading and
25  investment experience.

26  145.   Under California Corporations Code ("CCC") Section 25230, it is unlawful to
27  provide investment advice and to act in any way as an investment adviser without first
28  being licensed by the State of California.

| Page 24 of 30 | COMPLAINT FOR DAMAGES AND FORECLOSURE | Law Offices of David M. Zeff 1100 Larkspur Landing Circle #200 Larkspur, CA 94939 Tel: 415 923 1380 |
|---|---|---|

146.   At all times pertinent to this Complaint, Defendant Michael J. Draper was acting as an investment adviser as that term is defined in CCC Section 25009.

147.   Defendant Michael J. Draper is not and was not, at all times pertinent to this Complaint, in compliance with CCC Section 25230.

148.   California Corporations Code Section 25235 makes it unlawful for any person acting as an investment adviser to engage in any practices that are fraudulent, deceptive or manipulative.

149.   Defendant Michael J. Draper, in his dealings with Plaintiff, engaged in a course of conduct that violated California Corporations Code Section 25235.

150.   Defendant Michael J. Draper's actions not only caused Plaintiff to lose the principal of his investments in Hydrotec made through him and/or at his suggestion, it also caused him to lose the interest payments that he promised.

Wherefore, Plaintiff prays for Judgment as set forth hereafter.

## ELEVENTH CAUSE OF ACTION

VIOLATION OF SECTION 12(a)(2) OF THE SECURITIES ACT OF 1933

(Against Defendant Michael J. Draper)

151.   Plaintiff realleges and incorporates by reference paragraphs 1 through 50 of this Complaint as though set forth in full herein.

152.   For purposes of this Count, Plaintiffs expressly exclude and disclaim any allegation that could be construed as alleging fraud or intentional or reckless misconduct, as this Count is based solely on claims of strict liability and/or negligence under the Securities Act.

153.   Defendant Michael J. Draper was a seller, offeror, and/or solicitor of sale of the Hydrotec Promissory Notes under Section 12(a)(2) of the Securities Act and pertinent common law.

154.   Defendant Michael J. Draper offered, sold and/or solicited a security, namely the Hydrotec Promissory Notes by and through untrue and/or misleading statements of material fact that Defendant Michael J. Draper in the exercise of reasonable care should

| Page 25 of 30 | **COMPLAINT FOR DAMAGES AND FORECLOSURE** | *Law Offices of David M. Zeff*<br>*1100 Larkspur Landing Circle #200*<br>*Larkspur, CA 94939*<br>*Tel: 415 923 1380* |
| --- | --- | --- |

1  have known were false.

2  155.   Defendant Michael J. Draper's action of solicitation including soliciting Plaintiff

3  in person, over the telephone, through the mails and through emails.

4  156.   Defendant Michael J. Draper actively solicited the sale of the Hydrotec

5  Promissory Notes to serve his own financial interests.

6  157.   At the time of purchase of Hydrotec Promissory Notes, Plaintiff did not know that

7  the representations made to them by Defendant Michael J. Draper were untrue, and did

8  not know the above described omitted material facts, were not disclosed.

9  158.   Plaintiff did not know, or in the exercise of due diligence could not have known of

10  the untruths and omissions made by Defendant Michael J. Draper.

11  159.   This Action is brought within three years from the time that the securities upon

12  this Count is brought were sold, and within one year from the time when Plaintiff

13  discovered or reasonably could have discovered the facts upon which this Count is based.

14      Wherefore, Plaintiff prays for Judgment as set forth hereafter.

15                          PRAYER

16      WHEREFORE, Plaintiff requests judgment against Defendants as follows:

17          ON THE FIRST CAUSE OF ACTION AGAINST HYDROTEC

18                     (PROMISSORY NOTE)

19  1.      For compensatory damages and unpaid principal according to proof;

20  2.      For post-breach late fees and interest according to proof;

21  3.      For reasonable attorneys' fees according to proof;

22          ON THE SECOND CAUSE OF ACTION AGAINST HYDROTEC

23                     (COMMON COUNTS)

24  1.      For compensatory damages and unpaid principal according to proof;

25  2.      For post-breach late fees and interest according to proof;

26  3.      For reasonable attorneys' fees according to proof;

27      ON THE THIRD CAUSE OF ACTION AGAINST MICHAEL J. DRAPER AND

28                     LILIANA V. DRAPER

| Page 26 of 30 | COMPLAINT FOR DAMAGES AND FORECLOSURE | Law Offices of David M. Zeff 1100 Larkspur Landing Circle #200 Larkspur, CA 94939 Tel: 415 923 1380 |

(GUARANTY)

1.      For compensatory damages and unpaid principal according to proof;

2.      For post-breach late fees and interest according to proof;

3.      For reasonable attorneys' fees according to proof;

ON THE FOURTH CAUSE OF ACTION AGAINST MICHAEL J. DRAPER AND

LILIANA V. DRAPER

(JUDICIAL FORECLOSURE)

1.      Against Defendants Michael J. Draper and Liliana V. Draper for the total sum of $450,000 USD principal, plus post-breach late fees and interest according to proof;

2.      Against Defendants Michael J. Draper and Liliana V. Draper for attorney's fees in an amount that the court adjudges reasonable;

3.      Adjudging that the Deed of Trust be foreclosed, that the property be sold according to law by a levying officer to be appointed by the court, that the proceeds of the sale be applied in payment of the amounts due to Plaintiff, that [each] Defendant and all persons claiming under [each] Defendant, after execution of Plaintiffs' trust deed, whether as lien claimant, judgment creditor, claimant under a junior trust deed, purchaser, lienholder, or otherwise, be barred and foreclosed from all rights, claims, interests, or equity of redemption in the property and every part of the property when time for redemption has elapsed;

4.      Adjudging that Defendants Michael J. Draper and Liliana V. Draper are personally liable for payment of the obligation secured by the Deed of Trust, and that a deficiency judgment may be ordered following proceedings prescribed by law;

6. Permitting Plaintiff or any parties to this action to become a purchaser at the foreclosure sale;

7.      Directing the levying officer, after the time for redemption has elapsed, to execute a deed to the purchaser of the property at the sale, and directing that the

| Page 27 of 30 | **COMPLAINT FOR DAMAGES AND FORECLOSURE** | *Law Offices of David M. Zeff*<br>*1100 Larkspur Landing Circle #200*<br>*Larkspur, CA 94939*<br>*Tel: 415 923 1380* |
|---|---|---|

purchaser be let into possession of the property on production of the levying officer's deed.

ON THE FIFTH CAUSE OF ACTION AGAINST MICHAEL J. DRAPER AND DOES 1 THROUGH 25, INCLUSIVE

(OFFER AND SALE OF UNQUALIFIED, NON-EXEMPT SECURITIES IN VIOLATION OF CAL. CORP. CODE SECTION 25110)

1.  Recovery of all consideration paid by Plaintiff for the Promissory Notes, plus interest at the legal rate;

2.  For rescission and restitution to Plaintiffs of all monies wrongfully obtained.

ON THE SIXTH CAUSE OF ACTION AGAINST MICHAEL J. DRAPER AND DOES 1 THROUGH 25, INCLUSIVE

(MISREPRESENTATION OR OMISSION OF MATERIAL FACTS IN VIOLATION OF SECTION 25401)

1.  Recovery of the consideration paid for the security by Plaintiff;

2.  Recovery of pre- and post-judgment interest at the statutory rate, less any payments actually received Plaintiff.

3.  For rescission and restitution to Plaintiffs of all monies wrongfully obtained.

ON THE SEVENTH CAUSE OF ACTION AGAINST MICHAEL J. DRAPER AND DOES 1 THROUGH 25, INCLUSIVE

(UNLICENSED SALE OF SECURITIES IN VIOLATION OF CAL. CORP. CODE SECTIONS 25210 and 25501.5)

1.  Pursuant to Cal. Corp. Code Sections 25501.5(6)(b), the consideration paid by Plaintiff for the security plus pre- and post-judgment interest at the statutory rate;

2.  Pursuant to California Code of Civil Procedure Section 1029.8 et. seq., treble damages not to exceed $10,000 per each violation;

| Page 28 of 30 | **COMPLAINT FOR DAMAGES AND FORECLOSURE** | Law Offices of David M. Zeff 1100 Larkspur Landing Circle #200 Larkspur, CA 94939 Tel: 415 923 1380 |

3.     Pursuant to Cal. Corp. Code Sections 25501.5(6)(b) and California Code of Civil Procedure Section 1029.8 et. seq., reasonable attorneys' fees and costs, in addition to any damages.

4. For rescission and restitution to Plaintiffs of all monies wrongfully obtained.

ON THE EIGHTH CAUSE OF ACTION AGAINST MICHAEL J. DRAPER AND

DOES 1 THROUGH 25, INCLUSIVE

(FINANCIAL ELDER ABUSE)

1.     For compensatory damages according to proof;

2.     For punitive damages according to proof;

3.     For treble damages;

4.     For reasonable attorneys' fees according to proof, Pursuant to Welfare and Institutions Code Section 15657.

ON THE NINTH CAUSE OF ACTION AGAINST MICHAEL J. DRAPER AND

DOES 1 THROUGH 25, INCLUSIVE

(FRAUD)

1.     For compensatory damages according to proof;

2.     For punitive damages according to proof.

ON THE TENTH CAUSE OF ACTION AGAINST MICHAEL J. DRAPER AND

DOES 1 THROUGH 25, INCLUSIVE

(VIOLATIONS OF CALIFORNIA INVESTMENT ADVISORS CODE)

1.     For compensatory damages according to proof;

2.     Pursuant to California Code of Civil Procedure Section 1029.8 et. seq., treble damages not to exceed $10,000 per each violation;

3.     Pursuant to California Code of Civil Procedure Section 1029.8 et. seq., reasonable attorneys' fees and costs, in addition to any damages.

4. For rescission and restitution to Plaintiffs of all monies wrongfully obtained.

ON THE ELEVENTH CAUSE OF ACTION AGAINST MICHAEL J. DRAPER AND

DOES 1 THROUGH 25, INCLUSIVE

(VIOLATION OF SECTION 12(a)(2) OF THE SECURITIES ACT OF 1933)

1.    For compensatory damages according to proof.

2.    For rescission and restitution to Plaintiffs of all monies wrongfully obtained.

      ON ALL CAUSES OF ACTION AGAINST ALL DEFENDANTS

1.    For costs and related expenses according to proof;

2.    For both pre-judgment and post-judgment interest at the maximum allowable rate on any amounts awarded; and

3.    For such further relief as the court may deem just.

Dated: February 12, 2018             LAW OFFICES OF DAVID M. ZEFF

                                     By _____
                                      David M. Zeff
                                      Attorneys for Plaintiff
                                      MICHAEL D. YOKELL

# EXHIBIT 1

**EXHIBIT 1**

**EXHIBIT 1**

**_DO NOT DESTROY THIS AMENDED AND RESTATED NOTE:_**
When paid, this Amended and Restated Note and the Amended and Restated
Deed of Trust securing same, must be surrendered to Trustee
for cancellation and retention before reconveyance of the Amended and
Restated Deed of Trust will be made.

THIS IS A LEGAL INSTRUMENT. IF NOT UNDERSTOOD, LEGAL, TAX OR OTHER
COUNSEL SHOULD BE CONSULTED BEFORE SIGNING.

The Parties entered into a Secured Promissory Note dated August 31, 2016 ("Original
Promissory Note")

The Parties desire to amend and restate the Original Promissory Note in its entirety as follows

AMENDED AND RESTATED SECURED PROMISSORY NOTE

U.S. $450,000.00
San Francisco, California
Date:          , 2016

1.      FOR VALUE RECEIVED, subject to the terms and conditions of this Amended and
Restated Secured Promissory Note (the "Amended and Restated Note"), Hydrotec Renewables
Inc. ("Borrower") which is located at 31 Bronze St. SSS Village Barangay Conception II, Marika
City, Metro Manila, Philippines hereinafter called the ("Borrower") promise(s) to pay to Michael
D. Yokell 4253 Prado Drive Boulder CO 80303-9627 ("Lender") the principal sum of Four
Hundred Fifty Thousand Dollars ($450,000.00 U.S. Dollars together with interest on the unpaid
principal balance from the date hereof until paid with interest in full at the rate of 12.75% per
annum on the sum of Four Hundred Thousand Dollars ($400,000.00) from August 31, 2015 and
the rate of 14% on the sum of Fifty Thousand Dollars ($50,000.00) until otherwise modified as
provided for herein ("Amended and Restated Note"). The entire unpaid principal and all unpaid
interest accrued thereon shall be payable in full on March 8, 2017.

All Payments to be made hereunder shall be payable to Lender by wire transfer as follows:

Wiring Instructions for Michael Yokell

CityBank NA
111 Wall St.
New York, NY 10043

ABA# 021 000089
FBO Charles Schwab & Co., Inc.
Account # 4055-3953
For the account of:

Michael Yokell

1

Boulder, Colorado
Schwab Account 9686-4473

Alternative wiring instructions if originating wire transfer is outside the United States:

Memo to: Non-US Customers
From: Michael Yokell
Re: Wire transfer information for Non-US Customers
Date: 18 August, 2016

CityBank NA
111 Wall St.
New York, NY 10043

SWIFT CODE CITIUS33

FBO Charles Schwab & Co., Inc.
Account # 4060-7595
For the account of:

Michael Yokell
Schwab Account 9686-4473

or such other method as the Lender may designate, payable in the amount of Four Thousand Eight Hundred Thirty Three Dollars and Thirty Three Cents SD ($4,833.33) per month, commencing June 15, 2016 as a payment of interest only and payable on the first day of each month thereafter. .The entire unpaid principal in the amount of Four Hundred Fifty Thousand Dollars USD $450,000.00 Dollars plus accrued and unpaid interest and penalties shall be due and payable on March 8, 2017.

Such payments shall continue until the entire indebtedness evidenced by this Amended and Restated Note is fully paid: provided, however, if not sooner paid, the entire principal amount outstanding and accrued interest thereon and penalties and all other amounts due hereunder, shall be due and payable on March 8, 2017.

2.    Use of Proceeds        The Parties agree that the proceeds of this Amended and Restated Note shall be used by the Borrower to purchase equipment, as set forth on Schedule A attached hereto, which equipment shall be incorporated in a Special Purpose Vehicle entity known as Bunga SPV ("SPV") which SPV is formed to build a pilot hydro system generating 120kwh in the Philippines. The Parties further acknowledge that the borrower owns at least a majority interest in the SPV. The indebtedness represented by this Amended and Restated Note is secured by a security interest in the equipment set forth on Exhibit A. The Parties acknowledge that the Lender, by virtue of a separate agreement, has an equity ownership and revenue interest in the SPV ("Amended and Restated Conveyance of Interest in Project") which interest is separate and apart from this Amended and Restated Note and shall survive the termination of this Amended and Restated Note for any reason.

2

3.    Fees   Borrower shall pay to the Lender a loan origination fee of $1,000, shall pay Lenders costs and attorney's fees incurred in connection with this transaction and shall pay to the Lender a late charge of 10% of any payment not received by the Lender within 3 business days after the payment is due.

4.    Application of Payments       Payments received for application to this Amended and Restated Note shall be applied first to the payment of late charges, if any, second to the payment of accrued interest specified above, then to the payment of any other amounts due hereunder and the balance applied in reduction of the principal amount hereof.

5.    Prepayment   Borrower has the right to prepay the principal amount, penalties and all other amounts due hereunder outstanding under this Amended and Restated Note, in whole but not in part, as follows:

      i.    upon at least 30 days written notice on December 8, 2016 with the payment of two percent (2%) of the then outstanding principal balance, accrued interest, penalties and costs.

6.    Waiver.   The Borrower agrees that the granting without notice of any extension or extensions of time for payment of any sum or sums due hereunder, or under any security agreement or other instrument securing this Amended and Restated Note, or for the performance of any covenant, condition or agreement hereof or thereof or the taking or release of other or additional security or any changes in the Guaranty shall in no way release or discharge the liability of the Borrower or any signor hereof.

7.    Secured Amended and Restated Note.

The Parties acknowledge that Michael J. Draper and Liliana V. Draper jointly and severally collectively called the ("Guarantor") entered into an Amended and Restated Absolute Secured Guaranty of Payment of Amended and Restated Note of even date herewith ("Amended and Restated Guaranty") Guaranteeing the payment of this Amended and Restated Note in full which Guaranty is also secured by an Amended and Restated Deed of Trust ("Amended and Restated Deed of Trust") on certain real property owned by them and known as 1227 37th Avenue San Francisco CA and legally describe as:
 Real property in the City of San Francisco, County of San Francisco, State of California, described as follows:
      BEGINNING AT A POINT ON THE WESTERLY LINE OF 37TH AVENUE, DISTANT THEREON 150 FEET SOUTHERLY FROM THE SOUTHERLY LINE OF LINCOLN WAY; RUNNING THENCE SOUTHERLY ALONG SAID LINE OF 37TH AVENUE 25 FEET; THENCE AT A RIGHT ANGLE WESTERLY 120 FEET; THENCE AT A RIGHT ANGLE NORTHERLY 25 FEET; THENCE AT A RIGHT ANGLE EASTERLY 120 FEET TO THE POINT OF BEGINNING BEING A PORTION OF OUTSIDE LAND BLOCK NO., 636. APN: LOT: 004 BLOCK: 1713
      a)    Said Amended and Restated Deed of Trust contains additional rights of the Lender. A default pursuant to the Amended and Restated Deed of Trust will cause an

3

immediate Acceleration of the indebtedness evidenced by this Amended and Restated Note. Reference is made to said Amended and Restated Deed of Trust for additional terms.

b)      This Amended and Restated Note is further secured by a first security interest in the Equipment set forth on Exhibit A attached hereto and incorporated in the SPV as defined herein.

c)      This Amended and Restated Note is further secured by a first security interest in the Amended and Restated Conveyance of Interest in Project in the SPV as defined herein. A default pursuant to the Amended and Restated Conveyance of Interest in Project will cause an immediate Acceleration of the indebtedness evidenced by this Amended and Restated Note. Reference is made to said Amended and Restated Conveyance of Interest in Project for additional terms.

8.      Events of Default. Any of the following events shall also constitute an Event of Default.

a)      If any payment required by this Amended and Restated Note is not paid when due, the entire principal amount outstanding and accrued interest thereon shall at once become due and payable at the option of the Lender (Acceleration); and the indebtedness shall bear interest at the rate of 18%, percent per annum from the date of default. The Lender shall be entitled to collect all reasonable costs and expense of collection and/or suit, including, but not limited to reasonable attorneys' fees.

b)      The Borrower transfers more than a 25% ownership interest in the ownership of the Borrower without the written consent of Lender to an unrelated party.

c)      The Borrower ceases to own a majority interest in the SPV.

d)      Any uncured default by Guarantors pursuant to the Amended and Restated Guaranty, the Amended and Restated Conveyance of Interest in Project, the Amended and Restated Guaranty and the Amended and Restated Deed of Trust.

e)      Failure of the Borrower to use the proceeds of this Amended and Restated Note for the purchase of the Equipment and its incorporation in the SPV.

f)      Any failure of the Borrower to actively pursue the development and completion of the project contemplated by the SPV.

g)      Borrower or the SPV fails to comply with any of the terms of the Amended and Restated Conveyance of Interest in Project including but not limited to the failure to convey to the Lender the ownership interest or pay to the Lender the amounts required as set forth in such agreement.

h)      Borrower: (i) petitions or applies to any tribunal for or consents to the appointment of a receiver, (ii) admits in writing its inability to pay the debts as they mature, (iii) makes a general assignment for the benefit of its creditors, (iv) is adjudicated bankrupt or insolvent, (v) files voluntarily or has filed against it a petition in bankruptcy or a petition or an answer seeking reorganization or an arrangement with creditors or to take advantage of any bankruptcy, reorganization, insolvency, readjustment of debts, dissolution or liquidation law or statute, or (vi) there is any increase in the principal amount of the first lien indebtedness which is senior in priority to the principal amounts stated above and any default thereunder resulting in the exercise of the remedy of foreclosure by such senior lender.

4

9.    Default.  At the sole option of the Lender upon the occurrence of an Event of Default as set forth in paragraph 8, Borrower shall be liable for the following:

a)    the principal amount due hereunder together with all accrued interest penalties to date will accelerate and become due if an Event of Default occurs.

b)    The principal amount due hereunder shall bear interest at eighteen percent (18%) per annum.

c)    all reasonable costs and expense of collection and/or suit, including, but not limited to reasonable attorneys' fees

d)    all reasonable costs and expenses incurred in enforcing any remedies that the Lender may have pursuant to the Guaranty.

e)    a fee equal to Five (5%) percent of the principal amount of the then amount of this Amended and Restated Note then due and owing.

10.    Notice       Lender shall not be required to give the Borrower any notice of a monetary default. In the event of a non-monetary default, Lender shall give Bowwow seven (7) business days written Notice of Default specifying the nurture of the default.

11.    Amendment; Waiver.  Any term of this Amended and Restated Note may be amended, and the observance of any term of this Amended and Restated Note may be waived (either generally or in a particular instance and either retroactively or prospectively) only by the written consent of Borrower and the Lender.

12.    Assignment.  This Amended and Restated Note shall not be assigned by the Borrower without the written consent of the Lender.

13.    Notices.  Any notice or other document required or permitted to be given or delivered to Lender shall be delivered at, or sent by email, certified or registered mail to Lender at the address written first above, or to such other address as shall have been furnished to Borrower in writing by Lender.

Any notice or other document required or permitted to be given or delivered to Borrower shall be delivered at or sent by email, registered or certified mail to Borrower at

Hydrotec Renewables Inc.
31 Bronze St. SSS
Village Barangay Conception II,
Marika City,
Metro Manila, Philippines
Phone#
Email

or to such other email or address as shall have been furnished in writing to Lender by Borrower. Any notice so addressed and emailed or mailed by registered or certified mail shall be deemed to be given when so emailed or mailed.

5

14.     Governing Law/Jurisdiction/Venue. This Amended and Restated Note shall be governed in all respects by, and construed in accordance with, the laws of the State of California. Any action to enforce, which arises out of or in any way relates to, any of the provisions of this Amended and Restated Note or the instruments, agreements or other documents contemplated hereby, shall be brought and prosecuted in the courts of San Francisco California. Hydrotec irrevocably submits to the exclusive jurisdiction of the aforesaid courts and waives any objection which it may have at any time to the laying of venue of any suit, action or proceeding ("Proceedings") brought in such court, waives any claim that such Proceedings have been brought in an inconvenient forum and further waives the right to object, with respect to such Proceedings, that such court does not have jurisdiction over such party. The parties hereby consent to service of process by any means authorized by California law.

15.     The Parties agree that a scanned document signed by the respective Parties and emailed to the other Parties shall constitute a valid and enforceable agreement.

WITNESS WHEREOF, the Borrower has caused this Amended and Restated Note to be signed in his or its name on the date first written above.

**THIS IS A LEGAL DOCUMENT.  PLEASE READ IT CAREFULLY.
IT IS RECOMMENDED THAT YOU CONSULT YOUR LEGAL COUNSEL
BEFORE EXECUTING OR ACCEPTING THIS DOCUMENT.**

BORROWER:
Hydrotec Renewables Inc.


Hannes Mueller as Director of
Hydrotec Renewables Inc.

6

Complaint Exhibit 1

**ACKNOWLEDGMENT**

REPUBLIC OF THE PHILIPPINES

BACOLOD CITY)

BEFORE ME, a Notary Public in and for ___BACOLOD CITY___ on this ___29 JUN 2016___ day of _____, personally appeared the following:

| **Name** | **ID or Comm. Tax Cert. No.** | **Date/Place issued** |
|---|---|---|

Hannes Mueller

all known to me and to me known to be the same persons who executed the foregoing instrument consisting of eight (8) pages, including this page where the acknowledgment is written, duly signed by the parties and their instrumental witnesses at the spaces herein provided, and they acknowledged to me that the same is their own voluntary act and deed as well as the corporation they represent.

**WITNESS MY HAND AND SEAL** on the date and place first above written.

Doc. No. ___146___;
Page No. ___20___;
Book No. ___172___;
Series of 2016.

JOHN MARK E. RAMANO
Notary Public
For Bacolod City, Talisay City
Murcia and Don Salvador Benedicto
Notarial Commission No. NP0002-17
Until December 31, 2017
IBP No. 1002265 - Nov 20, 2015
PTR No. 5363305 - Jan. 4, 2016
All Issued at Bacolod City
Attorney's Roll No. 44035
MCLE Compliance No. V-0011066
Issued on October 1, 2015

7

**Exhibit A**

Description of Equipment incorporated in SPV and Security for this Amended and Restated Note

1. Cross Flow turbine

2. Asychronous generator

3. Control board

4. Complete set of spare parts

installation, test run and commissioning of all equipments will be performed by the engineers of the producer.

further infos ref. the turbine: https://en.wikipedia.org/wiki/Cross-flow_turbine

- The electrical switchgear for the protection, control and monitoring of the turbine system including the automatic control system for starting and stopping the turbine.

- A parallel grid switching and grid monitoring system of the public grid which includes all necessary protections as well as emergency stopping.

- Automatic power factor correction with a capacity of 600 KVA / 415 V AC / 60 Hz

- Regulation and control of water level, depending on the quantity of water.

The electrical control board/switchgear operates with high-end technology as:

- Touch Panel System (Mini PC) with a combined burden SPS system. The entire system operates on Profibus - Master.

- Multifunctional control and regulation system with an integrated Web server and connection via SPS to the Profibus - Skave.

- The control device has a flash memory where all data are saved automatically. Over-voltages, lightning strikes, grid power failure etc. can. if required, be displayed.

- All data as - Volts, Amps, kW, KVAR, Frequency, Power Factor, temperature of the generator, temperature of the control board etc. are permanently controlled and available and can be displayed directly via Profibus. Data output is via Profibus (GSD - file), our
system is the master.

- Remote control, monitoring and any program changes via Internet.

8

- Independent Satellite connection for control and data transfer, backup batteries, backup control and regulation units.

- Weather forecast system and analysis program.

- surveillance cameras at the dam sites and in and outside of the powerhouse

9

# EXHIBIT 2

**EXHIBIT 2**

**EXHIBIT 2**

### Amended and Restated Absolute Secured Guaranty of Payment of Amended and Restated Promissory Note

This Amended and Restated Absolute Secured Guaranty of Payment of Amended and Restated Promissory Note (Amended and Restated Guaranty") is dated this ⟨⟩ day of ⟨July⟩ 2016.

The Parties entered into an Absolute Secured Guaranty of Payment of Promissory Note dated August 31, 2015 ("Original Absolute Secured Guaranty of Payment of Promissory Note").

The Parties desire to amend and restate the Original Absolute Secured Guaranty of Payment of Promissory Note in its entirety as follows:

For value received, and for the purpose of enabling Hydrotec Renewables Inc. ("Borrower") which is located at 31 Bronze St. SSS Village Barangay Conception II, Marika City, Metro Manila, Philippines hereinafter called the "Borrower", to obtain credit or other financial accommodations from Michael D. Yokell 4253 Prado Drive Boulder CO 80303-9627 "Lender", we, Michael J. Draper and Liliana V. Draper jointly and severally of 1227 37th Avenue San Francisco CA 94122 hereinafter collectively called the ("Guarantor") hereby guarantees absolutely and unconditionally the payment to the Lender of that certain Amended and Restated Promissory Note ("Amended and Restated Note"), dated ⟨June 29⟩ 2016, pursuant to the terms of the Amended and Restated Note in the principal amount of Four Hundred Fifty Thousand Dollars ($450,000.00 USD) ("Amended and Restated Note Amount") made by Borrower and payable to Lender together with interest, late charges, penalties fees and other amounts which may be owing pursuant to said Amended and Restated Note ("Amended and Restated Note").

For value received, the Guarantor absolutely guarantees payment to Lender, at maturity, of the Amended and Restated Note executed by Borrower.

In addition thereto the Guarantor acknowledges that the Amended and Restated Note is made in connection with the development of a Project by Borrower in the Philippines and that in pursuant thereto the Lender has been granted an ownership interest and a revenue interest in the Project pursuant to an Amended and Restated Conveyance of Interest in Project ("Amended and Restated Conveyance of Interest in Project") of even date herewith by and between Hydrotec Renewables Inc. ("Hydrotec") and Michael D. Yokell 4253 Prado Drive Boulder CO 80303-9627 ("Yokell")  So long as the Amended and Restated Note is not paid in full according to its terms, in addition the other guarantees by Guarantor as provided for herein, Guarantor agrees to guarantee the transfer of the ownership interest to Lender, the payment of the revenue interest and all penalties and other undertakings therein and such additional guarantees shall be a part of this Amended and Restated Absolute Secured Guaranty of the Payment of the Amended and Restated Promissory Note and shall be secured and otherwise covered to the same extent that the Amended and Restated Note is secured.

The Guarantor understands that the Lender is relying upon the execution of this Amended and Restated Guaranty as a condition precedent to the making of the Amended and Restated Note.

The liability of Guarantor described above shall continue until payment is made of every obligation of Borrower described in the Amended and Restated Note now due or hereafter to

1

become. As part of the guaranteed obligations hereunder, the Guarantor agrees to pay reasonable attorneys' fees and all other reasonable costs and expenses which may be incurred by the Lender in the enforcement of this Amended and Restated Guaranty or in the collection of the Amended and Restated Note, or any substitution thereof, from the Borrower or the Guarantor. This Amended and Restated Guaranty is secured by an Amended and Restated Deed of Trust on real property owned by Guarantor and generally described as 1227 37ᵗʰ Avenue San Francisco CA and legally described as Real property in the City of San Francisco and State of California, described as follows:

> BEGINNING AT A POINT ON THE WESTERLY LINE OF 37TH AVENUE, DISTANT THEREON 150 FEET SOUTHERLY FROM THE SOUTHERLY LINE OF LINCOLN WAY; RUNNING THENCE
> SOUTHERLY ALONG SAID LINE OF 37TH AVENUE 25 FEET; THENCE AT A RIGHT ANGLE
> WESTERLY 120 FEET; THENCE AT A RIGHT ANGLE NORTHERLY 25 FEET; THENCE AT A RIGHT ANGLE EASTERLY 120 FEET TO THE POINT OF BEGINNING. BEING A PORTION OF OUTSIDE LAND BLOCK NO., 636. APN: LOT: 004 BLOCK: 1713

("Amended and Restated Deed of Trust"). Lender may surrender or release all or any portion of the Amended and Restated Deed of Trust without affecting this Amended and Restated Guaranty. It shall not be necessary for Lender to enforce payment by Borrower of the Amended and Restated Note to first institute suit, or to pursue or exhaust remedies against Guarantor or to foreclose the Amended and Restated Deed of Trust.

Any default pursuant to the Amended and Restated Note or the Amended and Restated Deed of Trust or a default pursuant to the Conveyance of Interest in Project shall constitute a default of this Amended and Restated Guaranty which shall cause the obligations of the Guarantors hereunder to be immediately due and payable upon three (3) business day's written notice to Guarantors from Lender.

It shall constitute a default pursuant to this Amended and Restated Guaranty if either or both of the Guarantors: (i) petitions or applies to any tribunal for or consents to the appointment of a receiver, (ii) admits in writing its inability to pay the debts as they mature, (iii) makes a general assignment for the benefit of its creditors, (iv) is adjudicated bankrupt or insolvent, (v) files voluntarily or has filed against it a petition in bankruptcy or a petition or an answer seeking reorganization or an arrangement with creditors or to take advantage of any bankruptcy, reorganization, insolvency, readjustment of debts, dissolution or liquidation law or statute, or (vi) there is any increase in the principal amount of the first lien indebtedness which is senior in priority to the principal amounts stated above and any default thereunder resulting in the exercise of the remedy of foreclosure by such senior lender.

Guarantors shall not transfer the Real Property which serves a security for the Amended and Restated Deed of Trust without the written consent of the Lender.

The Guarantor waives: (a) notice of acceptance of this Amended and Restated Guaranty by the Lender; (b) notice of the failure of any person, firm, or corporation, to pay to the Lender any

2

indebtedness owed to the Lender as collateral for the Amended and Restated Deed of Trust for any obligation of the Borrower; (c) the taking of collateral or guarantees now or at any time held by or available to Lender for the obligations of Borrower or any other party at any time liable for or in respect of the Amended and Restated Note; and (d) to the extent allowed by law, all defenses (other than prior payment in part or full of the guaranteed obligations and defenses arising from any statute of limitations), offsets and counterclaims which the Guarantor may at any time have to any claim of the Lender against the Borrower.

So long as this Amended and Restated Guaranty remains in effect, (i) Guarantor hereby irrevocably and unconditionally agrees waives and relinquishes all statutory, contractual, common law, equitable and all other claims against Borrower, any other guarantor of the payment of the Amended and Restated Note, any collateral for the Amended and Restated Note or other assets of Borrower or any other obligor, for subrogation, reimbursement, exoneration, contribution, indemnification, setoff or other recourse in respect of sums paid or payable to Lender by Guarantor hereunder and (ii) Guarantor hereby further irrevocably and unconditionally waives and relinquishes any and all other benefits which Guarantor might otherwise directly or indirectly receive or be entitled to receive by reason of any amounts paid by or collected or due from Guarantor or Borrower upon the Amended and Restated Note or realized from their property, provided any payments received by Lender will reduce the amount of the indebtedness owing from Borrower to Lender under the Amended and Restated Note.

The Guarantor hereby expressly authorizes the Lender, without notice to it, to agree on any modification to the Amended and Restated Note, and hereby waives presentment for payment, protest, notice of nonpayment or dishonor and notice of protest of any of the said evidences of indebtedness, renewals, extensions or modifications thereof and of the amount, beginning or ending of any credit which the Lender may extend to the Borrower.

Waiver. The Borrower agrees to be bound for all purposes with full recourse, waives any homestead exemption right against the debt evidenced by the Amended and Restated Note or this Amended and Restated Guaranty and any mortgage or Deed of Trust securing the same, and severally waive demand, diligence, presentment for payment, protest and notice of demand, protest, nonpayment and exercise of any option hereunder. The Borrower further agrees that the granting without notice of any extension or extensions of time for payment of any sum or sums due hereunder, or under the Amended and Restated Deed of Trust agreement or other instrument securing the Amended and Restated Note, or for the performance of any covenant, condition or agreement hereof or thereof or the taking or release of other or additional Deed of Trust shall in no way release or discharge the liability of the Borrower or any signor hereof.

This is a guaranty of payment and not of collection, and the Lender may at its option proceed in the first instance against the Guarantor to collect any obligation covered by this Amended and Restated Guaranty, without first proceeding against the Borrower, or any other person, firm, or corporation, and without first resorting to any Deed of Trust or to any balance of any deposit account or credit on the books of the Lender in favor of the Borrower or any other person. The Lender may apply any payments or credits received by the Lender from any source, in accordance with the Amended and Restated Note but the Lender agrees to give Guarantor prior notice of such application. The Guarantor agrees that if all or a portion of the indebtedness evidenced by the Amended and Restated Note is at any time secured by a Deed of Trust or

3

mortgage covering an interest in real property, the Lender, in its sole discretion, without notice or demand and without affecting the liability of the Guarantor under this Amended and Restated Guaranty, may foreclose such deed of trust or mortgage and the interests in real property secured thereby by nonjudicial sale.

If there be more than one guarantor under this agreement or under separate agreements for the Amended and Restated Note, then the revocation of this Amended and Restated Guaranty by one or more guarantors or the release of any one or more of the guarantors by the Lender from their guaranty, either with or without notice to the remaining guarantors, shall not affect or in any way impair or release this Amended and Restated Guaranty or the liability hereunder of the said remaining guarantors as to the indebtedness of the Borrower then or thereafter owned, purchased or otherwise acquired by the Lender. This Amended and Restated Guaranty shall remain in full force and binding upon the Guarantor and shall not be discharged until all indebtedness guaranteed hereby shall have been fully paid. Each reference herein to the Guarantor shall be deemed to include the heirs, executors, administrators, legal representatives, successors, and assigns of the Guarantor, all of whom shall be bound by the provisions of this Amended and Restated Guaranty.

Any notices required hereunder shall be sent to the parties at the following addresses:

| If to Lender: | If to Guarantor: |
|---|---|
| Michael D. Yokell | Michael J. & Liliana V. Draper |
| 4253 Prado Drive | 1227 37th Avenue |
| Boulder, Colorado 80303 | San Francisco CA 94122 |
| Email: myokell@yokell.net | Email:mikedraper63@gmail.com |

Any notice or other communication required or permitted hereunder shall be given in writing by delivering same in person to the intended addressee, or by United States Mail, postage prepaid, registered or certified mail, return receipt requested, or by nationally-recognized overnight delivery service, sent to the intended addressee at the address shown above, or to such different address as the addressee shall have designated by written notice sent in accordance herewith and actually received by the other party at least ten (10) days in advance of the date upon which such change of address shall be effective. Notice shall be deemed received on the date the notice is (i) delivered in person to said addressee, (ii) one (1) day after deposit with a nationally-recognized overnight delivery service, or (iii) two (2) days after deposit in the United States mail, registered or certified mail.

This Amended and Restated Guaranty is delivered and made in, and shall be construed pursuant to the laws of the State of California, and is binding upon the Guarantor and its successors and assigns, and shall inure to the benefit of the Lender, its successors and assigns. Venue shall be proper in the state district court located in San Francisco California.

Dated this          day of          , 2016.

## SIGNATURES ON NEXT PAGE

4

Michael J. Draper, Individually

Liliana V. Draper, Individually

A notary public or other officer completing this
certificate verifies only the identity of the individual
who signed the document to which this certificate is
attached, and not the truthfulness, accuracy, or
validity of that document.

STATE OF California )SS

COUNTY OF Contra Costa )

On July 1 2016 before me, Jennifer Klatt , Notary Public, person
Michael J. Draper, ~~Individually~~ and Liliana V. Draper, ~~Individually~~ on  appeared
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribe
within instrument and acknowledged to me that he/she/they executed the same in his/her/their aut
capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon be
which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing pa
true and correct.

WITNESS my hand and official seal.

Signature

This area for official notarial seal.



JENNIFER L. KLATT
Commission # 2040072
Notary Public - California
Contra Costa County
My Comm. Expires Sep 1, 2017

5

# EXHIBIT 3

**EXHIBIT 3**

EXHIBIT 3

**Fidelity National Title Company**

Escrow No: 1280558-VBA
Order No: 466274

Recording Requested By:
PROSPECT MORTGAGE, LLC

And After Recording Return To:
PROSPECT MORTGAGE, LLC
15301 VENTURA BLVD, SUITE D250
SHERMAN OAKS, CALIFORNIA 91403
Loan Number: 81337090

20139J79875600015
**San Francisco Assessor-Recorder**
**Carmen Chu, Assessor-Recorder**
DOC-
2013-J798756-00
**Acct 2005-Fidelity Title Company Concord**
**Wednesday, NOV 27, 2013 11:52:49**
**Ttl Pd   $60.00     Rcpt # 0004843146**
**REEL L033 IMAGE 0521**
onf/RE/1-15

1727 37th Ave
004/17B                    ———— [Space Above This Line For Recording Data] ————

# DEED OF TRUST

**MIN:**  100034200813370909                        **MERS Phone: 888-679-6377**

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A)  "Security Instrument"** means this document, which is dated   NOVEMBER 21, 2013       , together with all Riders to this document.
**(B)  "Borrower"** is       Michael J Draper and Liliana V Draper, HUSBAND AND WIFE AS JOINT TENANTS.

Borrower is the trustor under this Security Instrument.
**(C)  "Lender"** is PROSPECT MORTGAGE, LLC

Lender is a   LIMITED LIABILITY COMPANY                                    organized and existing under the laws of   DELAWARE
Lender's address is    15301 VENTURA BLVD, SUITE D300, SHERMAN OAKS, CALIFORNIA 91403

**(D)  "Trustee"** is   Fidelity National Title
887 Island Drive, Suite C, Alameda, California 94502

**(E)  "MERS"** is  Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the beneficiary under this Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
**(F)  "Note"** means the promissory note signed by Borrower and dated  NOVEMBER 21, 2013

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005  01/01                                        Page 1 of 14

*DocMagic ℰℱℴⓡⓜⓈ*
*www.docmagic.com*

Complaint Exhibit 3

The Note states that Borrower owes Lender  SIX HUNDRED FIFTEEN THOUSAND AND
00/100                         Dollars (U.S. $ 615,000.00    ) plus interest.
Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
DECEMBER 1, 2043          .
(G)  "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.
(I)  "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are
to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider          ☐ Planned Unit Development Rider
☐ Balloon Rider                  ☐ Biweekly Payment Rider
☐ 1-4 Family Rider               ☐ Second Home Rider
☐ Condominium Rider              ☐ Other(s) [specify]

(J)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.
(K)  "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.
(L)  "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account.  Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.
(M)  "Escrow Items" means those items that are described in Section 3.
(N)  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or
destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in
lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note,
plus (ii) any amounts under Section 3 of this Security Instrument.
(Q)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing
regulation, Regulation X (12 C.F.R. Part 1024), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter.  As used in this Security Instrument,
"RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan"
even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(R)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that
party has assumed Borrower's obligations under the Note and/or this Security Instrument.


## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and
assigns) and the successors and assigns of MERS.  This Security Instrument secures to Lender: (i) the repayment of

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005  01/01                         Page 2 of 14                          DocMagic eForms
                                                                              www.docmagic.com

Complaint Exhibit 3

the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY    of    SAN FRANCISCO                :

[Type of Recording Jurisdiction]                    [Name of Recording Jurisdiction]

BEGINNING AT A POINT ON THE WESTERLY LINE OF 37TH AVENUE, DISTANT THEREON 150 SOUTHERLY FROM THE SOUTHERLY LINE OF LINCOLN WAY; RUNNING THENCE SOUTHERLY ALONG SAID LINE OF 37TH AVENUE 25 FEET; THENCE AT A RIGHT ANGLE WESTERLY 120 FEET; THENCE AT A RIGHT ANGLE NOTHERLY 25 FEET; THENCE AT A RIGHT ANGLE EASTERLY 120 FEET TO THE POINT OF BEGINNING BEING A PORTION OF OUTSIDE LAND BLOCK NO., 636
A.P.N.: LOT 004, BLOCK 1713

which currently has the address of  1227 37TH AVENUE

[Street]

SAN FRANCISCO                , California      94122      ("Property Address"):
[City]                                    [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right:  to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

**UNIFORM COVENANTS.** Borrower and Lender covenant and agree as follows:
   1.  **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender

Complaint Exhibit 3

may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

    **2.   Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

    If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

    Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

    **3.   Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

    Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

**4. Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5. Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01
Page 5 of 14
DocMagic eForms
www.docmagic.com

Complaint Exhibit 3

by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005  01/01
Page 6 of 14

DocMagic eForms
www.docmagic.com

Complaint Exhibit 3

Description: San Francisco,CA Document - Year.DocID 2013.798756 Page: 6 of 15
Order: 17-00075-2 Comment:

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. Borrower shall not surrender the leasehold estate and interests herein conveyed or terminate or cancel the ground lease. Borrower shall not, without the express written consent of Lender, alter or amend the ground lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Complaint Exhibit 3

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) **Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.**

**11. Assignment of Miscellaneous Proceeds; Forfeiture.** All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005  01/01                                    Page 8 of 14                          *DocMagic eForms*
                                                                                          www.docmagic.com

Complaint Exhibit 3

Description: San Francisco,CA Document - Year.DocID 2013.798756 Page: 8 of 15
Order: 17-00075-2 Comment:

Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to

Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations

Complaint Exhibit 3

secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21. Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

Complaint Exhibit 3

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

**25. Statement of Obligation Fee.** Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Complaint Exhibit 3

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to Borrower at the address set forth above.

_____ (Seal)
MICHAEL D DRAPER          -Borrower

_____ (Seal)
LILIANA V DRAPER          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

_____ (Seal)
                          -Borrower

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005  01/01
Page 13 of 14

DocMagic ℰℱℴ𝓇𝓂𝓈
www.docmagic.com

Complaint Exhibit 3

—————————————— [Space Below This Line For Acknowledgment] ——————————————

State of __CALIFORNIA__ )
County of __ALAMEDA__ ) ss.
)

On __NOVEMBER 22, 2013__ before me, __D.PETERSEN, NOTARY PUBLIC__

personally appeared __MICHAEL J DRAPER AND LILIANA V DRAPER__

_____

_____ ,

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the
within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies),
and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true
and correct.

WITNESS my hand and official seal.

[Notary seal: D. PETERSEN, COMM. # 2025232, NOTARY PUBLIC-CALIFORNIA, ALAMEDA COUNTY, COMM. EXPIRES JUNE 15, 2017]

NOTARY SEAL

_DPetersm_
NOTARY SIGNATURE

_DPetersen_
(Typed Name of Notary)

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005  01/01                          Page 14 of 14

DocMagic *EForms*
www.docmagic.com

Complaint Exhibit 3

Description: San Francisco,CA Document - Year.DocID 2013.798756 Page: 14 of 15
Order: 17-00075-2 Comment:

Escrow No.: 13-12805589-VBA
Locate No.: CAFNT0938-0901-0028-0000466274
Title No.: 13-466274-DC

# EXHIBIT "A"

THE LAND REFERRED TO HEREIN BELOW IS SITUATED IN THE CITY OF SAN FRANCISCO, COUNTY OF SAN FRANCISCO, STATE OF CALIFORNIA, AND IS DESCRIBED AS FOLLOWS:

BEGINNING AT A POINT ON THE WESTERLY LINE OF 37TH AVENUE, DISTANT THEREON 150 FEET SOUTHERLY FROM THE SOUTHERLY LINE OF LINCOLN WAY; RUNNING THENCE SOUTHERLY ALONG SAID LINE OF 37TH AVENUE 25 FEET; THENCE AT A RIGHT ANGLE WESTERLY 120 FEET; THENCE AT A RIGHT ANGLE NORTHERLY 25 FEET; THENCE AT A RIGHT ANGLE EASTERLY 120 FEET TO THE POINT OF BEGINNING.

BEING A PORTION OF OUTSIDE LAND BLOCK NO., 636.

APN: Lot 004, Block 1713

Exhibit Page - Legal(exhibit)(08-07)

Complaint Exhibit 3

ORIGINAL

FILED BY FAX

**CM-010**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*<br>David M. Zeff (Bar # 63289)<br>Law Offices of David M. Zeff<br>1100 Larkspur Landing Circle #200<br>Larkspur, CA 94939<br>　TELEPHONE NO.: (415) 923-1380　FAX NO.: (415) 923-1382<br>ATTORNEY FOR *(Name):* MICHAEL YOKELL, Plaintiff | FOR COURT USE ONLY |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO
　STREET ADDRESS: 400 McAllister St., Room 103
　MAILING ADDRESS:
　CITY AND ZIP CODE: San Francisco 94102-4514
　BRANCH NAME:

**F I L E D**
San Francisco County Superior Court

FEB 13 2018

CLERK OF THE COURT
BY: Maralith Jones
　　　　　　　　　　　　Deputy Clerk

| CASE NAME:<br>　YOKELL v. HYDROTEC, et al. | |
|---|---|

| CIVIL CASE COVER SHEET | | Complex Case Designation | | CASE NUMBER:<br>CGC-18-564283 |
|---|---|---|---|---|
| [X] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | | JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check **one** box below for the case type that best describes this case:

**Auto Tort**
[ ] Auto (22)
[ ] Uninsured motorist (46)

**Other PI/PD/WD (Personal Injury/Property Damage/Wrongful Death) Tort**
[ ] Asbestos (04)
[ ] Product liability (24)
[ ] Medical malpractice (45)
[ ] Other PI/PD/WD (23)

**Non-PI/PD/WD (Other) Tort**
[ ] Business tort/unfair business practice (07)
[ ] Civil rights (08)
[ ] Defamation (13)
[ ] Fraud (16)
[ ] Intellectual property (19)
[ ] Professional negligence (25)
[ ] Other non-PI/PD/WD tort (35)

**Employment**
[ ] Wrongful termination (36)
[ ] Other employment (15)

**Contract**
[X] Breach of contract/warranty (06)
[ ] Rule 3.740 collections (09)
[ ] Other collections (09)
[ ] Insurance coverage (18)
[ ] Other contract (37)

**Real Property**
[ ] Eminent domain/Inverse condemnation (14)
[ ] Wrongful eviction (33)
[ ] Other real property (26)

**Unlawful Detainer**
[ ] Commercial (31)
[ ] Residential (32)
[ ] Drugs (38)

**Judicial Review**
[ ] Asset forfeiture (05)
[ ] Petition re: arbitration award (11)
[ ] Writ of mandate (02)
[ ] Other judicial review (39)

**Provisionally Complex Civil Litigation (Cal. Rules of Court, rules 3.400–3.403)**
[ ] Antitrust/Trade regulation (03)
[ ] Construction defect (10)
[ ] Mass tort (40)
[ ] Securities litigation (28)
[ ] Environmental/Toxic tort (30)
[ ] Insurance coverage claims arising from the above listed provisionally complex case types (41)

**Enforcement of Judgment**
[ ] Enforcement of judgment (20)

**Miscellaneous Civil Complaint**
[ ] RICO (27)
[ ] Other complaint *(not specified above)* (42)

**Miscellaneous Civil Petition**
[ ] Partnership and corporate governance (21)
[ ] Other petition *(not specified above)* (43)

2. This case [ ] is [X] is not complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
　a. [ ] Large number of separately represented parties
　b. [ ] Extensive motion practice raising difficult or novel issues that will be time-consuming to resolve
　c. [ ] Substantial amount of documentary evidence
　d. [ ] Large number of witnesses
　e. [ ] Coordination with related actions pending in one or more courts in other counties, states, or countries, or in a federal court
　f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought *(check all that apply):* a. [X] monetary　b. [X] nonmonetary; declaratory or injunctive relief　c. [X] punitive
4. Number of causes of action *(specify):* ELEVEN (11)
5. This case [ ] is [X] is not a class action suit.
6. If there are any known related cases, file and serve a notice of related case. *(You may use form CM-015.)*

Date: February 9, 2018

David M. Zeff
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only.

Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>*www.courtinfo.ca.gov* |
|---|---|---|

*LexisNexis® Automated California Judicial Council Forms*

## INSTRUCTIONS ON HOW TO COMPLETE THE COVER SHEET

**To Plaintiffs and Others Filing First Papers.** If you are filing a first paper (for example, a complaint) in a civil case, you **must** complete and file, along with your first paper, the *Civil Case Cover Sheet* contained on page 1. This information will be used to compile statistics about the types and numbers of cases filed. You must complete items 1 through 6 on the sheet. In item 1, you must check **one** box for the case type that best describes the case. If the case fits both a general and a more specific type of case listed in item 1, check the more specific one. If the case has multiple causes of action, check the box that best indicates the **primary** cause of action. To assist you in completing the sheet, examples of the cases that belong under each case type in item 1 are provided below. A cover sheet must be filed only with your initial paper. Failure to file a cover sheet with the first paper filed in a civil case may subject a party, its counsel, or both to sanctions under rules 2.30 and 3.220 of the California Rules of Court.

**To Parties in Rule 3.740 Collections Cases.** A "collections case" under rule 3.740 is defined as an action for recovery of money owed in a sum stated to be certain that is not more than $25,000, exclusive of interest and attorney's fees, arising from a transaction in which property, services, or money was acquired on credit. A collections case does not include an action seeking the following: (1) tort damages, (2) punitive damages, (3) recovery of real property, (4) recovery of personal property, or (5) a prejudgment writ of attachment. The identification of a case as a rule 3.740 collections case on this form means that it will be exempt from the general time-for-service requirements and case management rules, unless a defendant files a responsive pleading. A rule 3.740 collections case will be subject to the requirements for service and obtaining a judgment in rule 3.740.

**To Parties in Complex Cases.** In complex cases only, parties must also use the *Civil Case Cover Sheet* to designate whether the case is complex. If a plaintiff believes the case is complex under rule 3.400 of the California Rules of Court, this must be indicated by completing the appropriate boxes in items 1 and 2. If a plaintiff designates a case as complex, the cover sheet must be served with the complaint on all parties to the action. A defendant may file and serve no later than the time of its first appearance a joinder in the plaintiff's designation, a counter-designation that the case is not complex, or, if the plaintiff has made no designation, a designation that the case is complex.

### CASE TYPES AND EXAMPLES

**Auto Tort**
Auto (22)–Personal Injury/Property
   Damage/Wrongful Death
Uninsured Motorist (46) *(if the*
   *case involves an uninsured*
   *motorist claim subject to*
   *arbitration, check this item*
   *instead of Auto)*
**Other PI/PD/WD (Personal Injury/**
**Property Damage/Wrongful Death)**
**Tort**
Asbestos (04)
   Asbestos Property Damage
   Asbestos Personal Injury/
      Wrongful Death
Product Liability *(not asbestos or*
   *toxic/environmental)* (24)
Medical Malpractice (45)
   Medical Malpractice–
      Physicians & Surgeons
   Other Professional Health Care
      Malpractice
Other PI/PD/WD (23)
   Premises Liability (e.g., slip
      and fall)
   Intentional Bodily Injury/PD/WD
      (e.g., assault, vandalism)
   Intentional Infliction of
      Emotional Distress
   Negligent Infliction of
      Emotional Distress
   Other PI/PD/WD
**Non-PI/PD/WD (Other) Tort**
Business Tort/Unfair Business
   Practice (07)
Civil Rights (e.g., discrimination,
   false arrest) *(not civil*
   *harassment)* (08)
Defamation (e.g., slander, libel)
   (13)
Fraud (16)
Intellectual Property (19)
Professional Negligence (25)
   Legal Malpractice
   Other Professional Malpractice
      *(not medical or legal)*
Other Non-PI/PD/WD Tort (35)
**Employment**
Wrongful Termination (36)
Other Employment (15)

**Contract**
Breach of Contract/Warranty (06)
   Breach of Rental/Lease
      Contract *(not unlawful detainer*
      *or wrongful eviction)*
   Contract/Warranty Breach–Seller
      Plaintiff *(not fraud or negligence)*
   Negligent Breach of Contract/
      Warranty
   Other Breach of Contract/Warranty
Collections (e.g., money owed, open
   book accounts) (09)
   Collection Case–Seller Plaintiff
   Other Promissory Note/Collections
      Case
Insurance Coverage *(not provisionally*
   *complex)* (18)
   Auto Subrogation
   Other Coverage
Other Contract (37)
   Contractual Fraud
   Other Contract Dispute
**Real Property**
Eminent Domain/Inverse
   Condemnation (14)
Wrongful Eviction (33)
Other Real Property (e.g., quiet title) (26)
   Writ of Possession of Real Property
   Mortgage Foreclosure
   Quiet Title
   Other Real Property *(not eminent*
      *domain, landlord/tenant, or*
      *foreclosure)*
**Unlawful Detainer**
Commercial (31)
Residential (32)
Drugs (38) *(if the case involves illegal*
   *drugs, check this item; otherwise,*
   *report as Commercial or Residential)*
**Judicial Review**
Asset Forfeiture (05)
Petition Re: Arbitration Award (11)
Writ of Mandate (02)
   Writ–Administrative Mandamus
   Writ–Mandamus on Limited Court
      Case Matter
   Writ–Other Limited Court Case
      Review
Other Judicial Review (39)
   Review of Health Officer Order
   Notice of Appeal–Labor
      Commissioner Appeals

**Provisionally Complex Civil Litigation (Cal.**
**Rules of Court Rules 3.400–3.403)**
Antitrust/Trade Regulation (03)
Construction Defect (10)
Claims Involving Mass Tort (40)
Securities Litigation (28)
Environmental/Toxic Tort (30)
Insurance Coverage Claims
   *(arising from provisionally complex*
   *case type listed above)* (41)
**Enforcement of Judgment**
Enforcement of Judgment (20)
   Abstract of Judgment (Out of
      County)
   Confession of Judgment *(non-*
      *domestic relations)*
   Sister State Judgment
   Administrative Agency Award
      *(not unpaid taxes)*
   Petition/Certification of Entry of
      Judgment on Unpaid Taxes
   Other Enforcement of Judgment
      Case
**Miscellaneous Civil Complaint**
RICO (27)
Other Complaint *(not specified*
   *above)* (42)
   Declaratory Relief Only
   Injunctive Relief Only *(non-*
      *harassment)*
   Mechanics Lien
   Other Commercial Complaint
      Case *(non-tort/non-complex)*
   Other Civil Complaint
      *(non-tort/non-complex)*
**Miscellaneous Civil Petition**
Partnership and Corporate
   Governance (21)
Other Petition *(not specified*
   *above)* (43)
   Civil Harassment
   Workplace Violence
   Elder/Dependent Adult
      Abuse
   Election Contest
   Petition for Name Change
   Petition for Relief From Late
      Claim
   Other Civil Petition

CM-010 [Rev. July 1, 2007]        **CIVIL CASE COVER SHEET**       *LexisNexis® Automated California Judicial Council Forms*



**Superior Court of California, County of San Francisco**
**Alternative Dispute Resolution**
**Program Information Package**



| The plaintiff must serve a copy of the ADR information package on each defendant along with the complaint.  (CRC 3.221(c)) |
| --- |

## WHAT IS ADR?

Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial.  There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences.  In ADR, trained, impartial people decide disputes or help parties decide disputes themselves. They can help parties resolve disputes without having to go to court.

## WHY CHOOSE ADR?

"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial." (Local Rule 4)

ADR can have a number of advantages over traditional litigation:

- **ADR can save time.**  A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.**  The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.**  For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

## HOW DO I PARTICIPATE IN ADR?

Litigants may elect to participate in ADR at any point in a case.  General civil cases may voluntarily enter into the court's ADR programs by any of the following means:

- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet) at the clerk's office located at 400 McAllister Street, Room 103;
- Indicating your ADR preference on the Case Management Statement (also attached to this packet); or
- Contacting the court's ADR office (see below) or the Bar Association of San Francisco's ADR Services at 415-782-8905 or www.sfbar.org/adr for more information.

**For more information about ADR programs or dispute resolution alternatives, contact:**

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA   94102
415-551-3869

*Or, visit the court ADR website at www.sfsuperiorcourt.org*

The San Francisco Superior Court offers different types of ADR processes for general civil matters; each ADR program is described in the subsections below:

## 1) SETTLEMENT CONFERENCES

The goal of settlement conferences is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute early in the litigation process.

**(A) THE BAR ASSOCIATION OF SAN FRANCISCO (BASF) EARLY SETTLEMENT PROGRAM (ESP):** ESP remains as one of the Court's ADR programs (see Local Rule 4.3) but parties must select the program – the Court no longer will order parties into ESP.

**Operation:** Panels of pre-screened attorneys (one plaintiff, one defense counsel) each with at least 10 years' trial experience provide a minimum of two hours of settlement conference time, including evaluation of strengths and weakness of a case and potential case value. On occasion, a panelist with extensive experience in both plaintiff and defense roles serves as a sole panelist. BASF handles notification to all parties, conflict checks with the panelists, and full case management. The success rate for the program is 78% and the satisfaction rate is 97%. Full procedures are at: www.sfbar.org/esp.

**Cost:** BASF charges an administrative fee of $295 per party with a cap of $590 for parties represented by the same counsel. Waivers are available to those who qualify. For more information, call Marilyn King at 415-782-8905, email adr@sfbar.org or see enclosed brochure.

**(B) MANDATORY SETTLEMENT CONFERENCES:** Parties may elect to apply to the Presiding Judge's department for a specially-set mandatory settlement conference. See Local Rule 5.0 for further instructions. Upon approval of the Presiding Judge, the court will schedule the conference and assign the case for a settlement conference.

## 2) MEDIATION

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law.

**(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO,** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending.

**Operation:** Experienced professional mediators, screened and approved, provide one hour of preparation time and the first two hours of mediation time. Mediation time beyond that is charged at the mediator's hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties can select their mediator from the panels at www.sfbar.org/mediation or BASF can assist with mediator selection. The BASF website contains photographs, biographies, and videos of the mediators as well as testimonials to assist with the selection process. BASF staff handles conflict checks and full case management. Mediators work with parties to arrive at a mutually agreeable solution. The success rate for the program is 64% and the satisfaction rate is 99%.

**Cost:** BASF charges an administrative fee of $295 per party. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waivers of the administrative fee are available to those who qualify. For more information, call Marilyn King at 415-782-8905, email adr@sfbar.org or see the enclosed brochure.

**(B) JUDICIAL MEDIATION** provides mediation with a San Francisco Superior Court judge for civil cases, which include but are not limited to, personal injury, construction defect, employment, professional malpractice, insurance coverage, toxic torts and industrial accidents. Parties may utilize this program at anytime throughout the litigation process.

**Operation:** Parties interested in judicial mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program. A preference for a specific judge may be indicated. The court will coordinate assignment of cases for the program. There is no charge for the Judicial Mediation program.

**(C) PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, parties may elect any private mediator of their choice; the selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

## 3) ARBITRATION

An arbitrator is neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

**(A) JUDICIAL ARBITRATION:** When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial.

**Operation:** Pursuant to CCP 1141.11, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed. Local Rule 4.2 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after the filing of a complaint. There is no cost to the parties for judicial arbitration.

**(B) PRIVATE ARBITRATION:** Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE THE ATTACHED STIPULATION TO ADR AND SUBMIT IT TO THE COURT. YOU MUST ALSO CONTACT BASF TO ENROLL IN THE LISTED BASF PROGRAMS. THE COURT DOES NOT FORWARD COPIES OF STIPULATIONS TO BASF.



# Superior Court of California
## County of San Francisco



**HON. TERI L. JACKSON**
**PRESIDING JUDGE**

## Judicial Mediation Program

**JENIFFER B. ALCANTARA**
**ADR ADMINISTRATOR**

The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. Cases that will be considered for participation in the program include, but are not limited to personal injury, professional malpractice, construction, employment, insurance coverage disputes, mass torts and complex commercial litigation. Judicial Mediation offers civil litigants the opportunity to engage in early mediation of a case shortly after filing the complaint in an effort to resolve the matter before substantial funds are expended. This program may also be utilized at anytime throughout the litigation process. The panel of judges currently participating in the program includes:

The Honorable Suzanne R. Bolanos          The Honorable Stephen M. Murphy
The Honorable Angela Bradstreet           The Honorable Joseph M. Quinn
The Honorable Andrew Y.S. Cheng           The Honorable James Robertson, II
The Honorable Samuel K. Feng              The Honorable John K. Stewart
The Honorable Curtis E.A. Karnow          The Honorable Richard B. Ulmer, Jr.
The Honorable Charlene P. Kiesselbach     The Honorable Mary E. Wiss

Parties interested in Judicial Mediation should file a Stipulation to Judicial Mediation indicating a joint request for inclusion in the program and deliver a courtesy copy to Department 610. A preference for a specific judge may be indicated on the request, and although not guaranteed due to the judge's availability, every effort will be made to fulfill the parties' choice for a particular judge. Please allow at least 30 days from the filing of the form to receive the notice of assignment. The court's Alternative Dispute Resolution Administrator will facilitate assignment of cases that qualify for the program.

Note: Space and availability is limited. Submission of a stipulation to Judicial Mediation does *not* guarantee inclusion in the program. You will receive written notification from the court as to the outcome of your application.

Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA 94102
(415) 551-3869

07/2017 (ja)

## EJT-001-INFO   Expedited Jury Trial Information Sheet

This information sheet is for anyone involved in a civil lawsuit who will be taking part in an **expedited jury trial**—a trial that is shorter and has a smaller jury than a traditional jury trial.

> You can find the law and rules governing expedited jury trials in Code of Civil Procedure sections 630.01–630.29 and in rules 3.1545–3.1553 of the California Rules of Court. You can find these at any county law library or online. The statutes are online at *http://leginfo.legislature.ca.gov/faces/codes.xhtml.* The rules are at *www.courts.ca.gov/rules.*

### ① What is an expedited jury trial?

An expedited jury trial is a short trial, generally lasting only one or two days. It is intended to be quicker and less expensive than a traditional jury trial.

As in a traditional jury trial, a jury will hear your case and will reach a decision about whether one side has to pay money to the other side. An expedited jury trial differs from a regular jury trial in several important ways:

- **The trial will be shorter.** Each side has 5 hours to pick a jury, put on all its witnesses, show the jury its evidence, and argue its case.
- **The jury will be smaller.** There will be 8 jurors instead of 12.
- **Choosing the jury will be faster.** The parties will exercise fewer challenges.

### ② What cases have expedited jury trials?

- **Mandatory expedited jury trials.** All limited civil cases—cases where the demand for damages or the value of property at issue is $25,000 or less—come within the *mandatory expedited jury trial* procedures. These can be found in the Code of Civil Procedure, starting at section 630.20. Unless your case is an unlawful detainer (eviction) action, or meets one of the exceptions set out in the statute, it will be within the expedited jury trial procedures. These exceptions are explained more in ⑦ below.

  - **Voluntary expedited jury trials.** If your civil case is not a limited civil case, or even if it is, you can choose to take part in a *voluntary expedited jury trial,* if all the parties agree to do so. Voluntary expedited jury trials have the same shorter time frame and smaller jury that the

mandatory ones do, but have one other important aspect—**all parties must waive their rights to appeal.** In order to help keep down the costs of litigation, there are no appeals following a *voluntary* expedited jury trial except in very limited circumstances. These are explained more fully in ⑨ .

### ③ Will the case be in front of a judge?

The trial will take place at a courthouse and a judge, or, if you agree, a temporary judge (a court commissioner or an experienced attorney that the court appoints to act as a judge) will handle the trial.

### ④ Does the jury have to reach a unanimous decision?

No. Just as in a traditional civil jury trial, only three-quarters of the jury must agree in order to reach a decision in an expedited jury trial. With 8 people on the jury, that means that at least 6 of the jurors must agree on the verdict in an expedited jury trial.

### ⑤ Is the decision of the jury binding on the parties?

Generally, yes, but not always. A verdict from a jury in an expedited jury trial is like a verdict in a traditional jury trial. The court will enter a judgment based on the verdict, the jury's decision that one or more defendants will pay money to the plaintiff or that the plaintiff gets no money at all.

But parties in an expedited jury trial, like in other kinds of trials, are allowed to make an agreement before the trial that guarantees that the defendant will pay a certain amount to the plaintiff even if the jury decides on a lower payment or no payment. That agreement may also put a cap on the highest amount that a defendant has to pay, even if the jury decides on a higher amount. These agreements are known as "high/low agreements." You should discuss with your attorney whether you should enter into such an agreement in your case and how it will affect you.

### ⑥ How else is an expedited jury trial different?

The goal of the expedited jury trial process is to have shorter and less expensive trials.

- The cases that come within the mandatory expedited jury procedures are all limited civil actions, and they must proceed under the limited discovery and

Judicial Council of California, www.courts.ca.gov
Revised July 1, 2016, Mandatory Form
Code of Civil Procedure, § 630.01–630.10
Cal. Rules of Court, rules 3.1545–3.1553

**Expedited Jury Trial Information Sheet**

EJT-001-INFO, Page 1 of 2 

## EJT-001-INFO   Expedited Jury Trial Information Sheet

pretrial rules that apply to those actions. See Code of Civil Procedure sections 90–100.

- The voluntary expedited jury trial rules set up some special procedures to help those cases have shorter and less expensive trials. For example, the rules require that several weeks before the trial takes place, the parties show each other all exhibits and tell each other what witnesses will be at the trial. In addition, the judge will meet with the attorneys before the trial to work out some things in advance.

The other big difference is that the parties in either kind of expedited jury trial can make agreements about how the case will be tried so that it can be tried quickly and effectively. These agreements may include what rules will apply to the case, how many witnesses can testify for each side, what kind of evidence may be used, and what facts the parties already agree to and so do not need the jury to decide. The parties can agree to modify many of the rules that apply to trials generally or to any pretrial aspect of the expedited jury trials.

(7)  **Do I have to have an expedited jury trial if my case is for $25,000 or less?**

Not always.  There are some exceptions.

- The mandatory expedited jury trial procedures do not apply to any unlawful detainer or eviction case.
- Any party may ask to opt out of the procedures if the case meets any of the criteria set out in Code of Civil Procedure section 630.20(b), all of which are also described in item 2 of the *Request to Opt Out of Mandatory Expedited Jury Trial* (form EJT-003). Any request to opt out must be made on that form, and it must be made within a certain time period, as set out in Cal. Rules of Court, rule 3.1546(c). Any opposition must be filed within 15 days after the request has been served.

> *The remainder of this information sheet applies only to voluntary expedited jury trials.*

(8)  **Who can take part in a voluntary expedited jury trial?**

The process can be used in any civil case that the parties agree may be tried in one or two days. To have a voluntary expedited jury trial, both sides must want one. Each side must agree to all the rules described in (1), and to waive most appeal rights. The agreements between the parties must be put into writing in a

document called *[Proposed] Consent Order for Voluntary Expedited Jury Trial*, which will be submitted to the court for approval. (Form EJT-020 may be used for this.) The court must issue the consent order as proposed by the parties unless the court finds good cause why the action should not proceed through the expedited jury trial process.

(9)  **Why do I give up most of my rights to an appeal in a voluntary expedited jury trial?**

To keep costs down and provide a faster end to the case, all parties who agree to take part in a voluntary expedited jury trial must agree to waive the right to appeal the jury verdict or decisions by the judicial officer concerning the trial unless one of the following happens:

- Misconduct of the judicial officer that materially affected substantial rights of a party;
- Misconduct of the jury; or
- Corruption or fraud or some other bad act that prevented a fair trial.

In addition, parties may not ask the judge to set the jury verdict aside, except on those same grounds. Neither you nor the other side will be able to ask for a new trial on the grounds that the jury verdict was too high or too low, that legal mistakes were made before or during the trial, or that new evidence was found later.

(10)  **Can I change my mind after agreeing to a voluntary expedited jury trial?**

No, unless the other side or the court agrees. Once you and the other side have agreed to take part in a voluntary expedited jury trial, that agreement is binding on both sides. It can be changed only if **both** sides want to change it or stop the process or if a court decides there are good reasons the voluntary expedited jury trial should not be used in the case. This is why it is important to talk to your attorney **before** agreeing to a voluntary expedited jury trial. This information sheet does not cover everything you may need to know about voluntary expedited jury trials. It only gives you an overview of the process and how it may affect your rights. **You should discuss all the points covered here and any questions you have about expedited jury trials with an attorney before agreeing to a voluntary expedited jury trial**.

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name  and address)* | *FOR COURT USE ONLY* |
|---|---|
| TELEPHONE NO.:<br>ATTORNEY FOR *(Name):*<br><br>**SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO**<br>400 McAllister Street<br>San Francisco, CA 94102-4514<br><br>PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: | |

| **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR)** | CASE NUMBER:<br>**DEPARTMENT 610** |
|---|---|

**1)   The parties hereby stipulate that this action shall be submitted to the following ADR process:**

☐   **Early Settlement Program of the Bar Association of San Francisco (BASF) -** Pre-screened experienced attorneys provide a minimum of 2 hours of settlement conference time for a BASF administrative fee of $295 per party.  Waivers are available to those who qualify.  BASF handles notification to all parties, conflict checks with the panelists, and full case management.  www.sfbar.org/esp

☐   **Mediation Services of BASF -** Experienced professional mediators, screened and approved, provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of $295 per party. Mediation time beyond that is charged at the mediator's hourly rate.  Waivers of the administrative fee are available to those who qualify.  BASF assists parties with mediator selection, conflicts checks and full case management.  www.sfbar.org/mediation

☐   **Private Mediation -** Mediators and ADR provider organizations charge by the hour or by the day, current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the Internet.

☐   **Judicial Arbitration -** Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no equitable relief is sought.  The court appoints a pre-screened arbitrator who will issue an award.  There is no fee for this program.  www.sfsuperiorcourt.org

☐   **Judicial Mediation -** The Judicial Mediation program offers mediation in civil litigation with a San Francisco Superior Court judge familiar with the area of the law that is the subject of the controversy. There is no fee for this program. www.sfsuperiorcourt.org

Judge Requested (see list of Judges currently participating in the program): _____

Date range requested for Judicial Mediation (from the filing of stipulation to Judicial Mediation):

☐ 30-90 days   ☐ 90-120 days   ☐ Other (please specify) _____

☐   **Other ADR process (describe)** _____

**2)**   The parties agree that the ADR Process shall be completed by (date): _____

**3)**   Plaintiff(s) and Defendant(s) further agree as follows:

_____

_____

| | |
|---|---|
| _____<br>Name of Party Stipulating | _____<br>Name of Party Stipulating |
| _____<br>Name of Party or Attorney Executing Stipulation | _____<br>Name of Party or Attorney Executing Stipulation |
| _____<br>Signature of Party or Attorney | _____<br>Signature of Party or Attorney |
| ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant | ☐ Plaintiff  ☐ Defendant  ☐ Cross-defendant |
| Dated: _____ | Dated: _____ |

☐   *Additional signature(s) attached*

ADR-2  03/15                    **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**

CM-110

| | |
|---|---|
| **ATTORNEY OR PARTY WITHOUT ATTORNEY** *(Name, State Bar number, and address):* | *FOR COURT USE ONLY* |

TELEPHONE NO.:           FAX NO. *(Optional)*:

E-MAIL ADDRESS *(Optional)*:

ATTORNEY FOR *(Name)*:

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**

STREET ADDRESS:

MAILING ADDRESS:

CITY AND ZIP CODE:

BRANCH NAME:

PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT** | CASE NUMBER: |
|---|---|
| *(Check one):* ☐ **UNLIMITED CASE** (Amount demanded exceeds $25,000)  ☐ **LIMITED CASE** (Amount demanded is $25,000 or less) | |

A **CASE MANAGEMENT CONFERENCE** is scheduled as follows:

Date:    Time:    Dept.:    Div.:    Room:

Address of court *(if different from the address above)*:

☐ **Notice of Intent to Appear by Telephone, by** *(name)*:

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. ☐ This statement is submitted by party *(name)*:
   b. ☐ This statement is submitted **jointly** by parties *(names)*:

2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a. The complaint was filed on *(date)*:
   b. ☐ The cross-complaint, if any, was filed on *(date)*:

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐ All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☐ The following parties named in the complaint or cross-complaint
      (1) ☐ have not been served *(specify names and explain why not)*:
      (2) ☐ have been served but have not appeared and have not been dismissed *(specify names)*:
      (3) ☐ have had a default entered against them *(specify names)*:
   c. ☐ The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served)*:

4. **Description of case**
   a. Type of case in ☐ complaint ☐ cross-complaint *(Describe, including causes of action)*:

Form Adopted for Mandatory Use
Judicial Council of California
CM-110 [Rev. July 1, 2011]

**CASE MANAGEMENT STATEMENT**

Cal. Rules of Court,
rules 3.720–3.730
www.courts.ca.gov

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4. b.   Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐   *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.   **Jury or nonjury trial**
The party or parties request ☐ a jury trial ☐ a nonjury trial.   *(If more than one party, provide the name of each party requesting a jury trial):*

6.   **Trial date**
a.   ☐ The trial has been set for *(date):*
b.   ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c.   Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.   **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a.   ☐ days *(specify number):*
b.   ☐ hours (short causes) *(specify):*

8.   **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
a.   Attorney:
b.   Firm:
c.   Address:
d.   Telephone number:              f.   Fax number:
e.   E-mail address:              g.   Party represented:
☐   Additional representation is described in Attachment 8.

9.   **Preference**
☐   This case is entitled to preference *(specify code section):*

10.   **Alternative dispute resolution (ADR)**
a.   **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.
(1)   For parties represented by counsel: Counsel ☐ has ☐ has not   provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2)   For self-represented parties: Party ☐ has ☐ has not  reviewed the ADR information package identified in rule 3.221.

b.   **Referral to judicial arbitration or civil action mediation** (if available).
(1)   ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2)   ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3)   ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

**CASE MANAGEMENT STATEMENT**

**CM-110**

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. c. Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information):*

|  | The party or parties completing this form **are willing** to participate in the following ADR processes *(check all that apply):* | If the party or parties completing this form in the case **have agreed** to participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation):* |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled<br>☐ Mediation session scheduled for *(date):*<br>☐ Agreed to complete mediation by *(date):*<br>☐ Mediation completed on *(date):* |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled<br>☐ Settlement conference scheduled for *(date):*<br>☐ Agreed to complete settlement conference by *(date):*<br>☐ Settlement conference completed on *(date):* |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled<br>☐ Neutral evaluation scheduled for *(date):*<br>☐ Agreed to complete neutral evaluation by *(date):*<br>☐ Neutral evaluation completed on *(date):* |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled<br>☐ Judicial arbitration scheduled for *(date):*<br>☐ Agreed to complete judicial arbitration by *(date):*<br>☐ Judicial arbitration completed on *(date):* |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled<br>☐ Private arbitration scheduled for *(date):*<br>☐ Agreed to complete private arbitration by *(date):*<br>☐ Private arbitration completed on *(date):* |
| (6) Other *(specify):* | ☐ | ☐ ADR session not yet scheduled<br>☐ ADR session scheduled for *(date):*<br>☐ Agreed to complete ADR session by *(date):*<br>☐ ADR completed on *(date):* |

CM-110 [Rev. July 1, 2011]　　　　　　　　　　**CASE MANAGEMENT STATEMENT**　　　　　　　　　　**Page 3 of 5**

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

11. **Insurance**
    a. ☐ Insurance carrier, if any, for party filing this statement *(name):*
    b. Reservation of rights: ☐ Yes ☐ No
    c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

12. **Jurisdiction**
    Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.
    ☐ Bankruptcy ☐ Other *(specify):*
    Status:

13. **Related cases, consolidation, and coordination**
    a. ☐ There are companion, underlying, or related cases.
        (1) Name of case:
        (2) Name of court:
        (3) Case number:
        (4) Status:
        ☐ Additional cases are described in Attachment 13a.
    b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

14. **Bifurcation**
    ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

15. **Other motions**
    ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

16. **Discovery**
    a. ☐ The party or parties have completed all discovery.
    b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*
        Party        Description        Date

    c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Economic litigation**

a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**19. Meet and confer**

a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____        ▶ _____
(TYPE OR PRINT NAME)                                      (SIGNATURE OF PARTY OR ATTORNEY)

_____        ▶ _____
(TYPE OR PRINT NAME)                                      (SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.

CM-110 [Rev. July 1, 2011]          **CASE MANAGEMENT STATEMENT**          Page 5 of 5

# NOTICE TO PLAINTIFF

A Case Management Conference is set for:

**DATE:** **JUL-18-2018**

**TIME:** **10:30AM**

**PLACE:** **Department 610**
**400 McAllister Street**
**San Francisco, CA  94102-3680**

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference.  However, it would facilitate the issuance of a case management order **without an appearance** at the case management conference if the case management statement is filed, served and lodged in Department 610 twenty-five (25) days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.  **This case is eligible for electronic filing and service per Local Rule 2.11.  For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**
(SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3869

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.**

# EXHIBIT 2

Service of Summons

**SUM-100**

# SUMMONS
## *(CITACION JUDICIAL)*

| | FOR COURT USE ONLY<br>*(SOLO PARA USO DE LA CORTE)* |
|---|---|

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*
HYDROTEC RENEWABLES, INC., a Philippine Corporation,
MICHAEL J. DRAPER and LILIANA V. DRAPER, Married Individuals,
Additional Parties Attachment form is attached.

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*
MICHAEL YOKELL, An Individual,

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have **30 CALENDAR DAYS** after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (*www.lawhelpcalifornia.org*), the California Courts Online Self-Help Center (*www.courtinfo.ca.gov/selfhelp*), or by contacting your local court or county bar association. **NOTE:** The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

| | |
|---|---|
| The name and address of the court is:<br>*(El nombre y dirección de la corte es):*<br>SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN<br>FRANCISCO<br>400 McAllister St., Room 103, San Francisco, CA 94102-4514 | **CASE NUMBER:**<br>*(Número del Caso):*<br>CGC-18-564283 |

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
David M. Zeff   (Bar # 63289)        Fax No.: (415) 923-1382
Law Offices of David M. Zeff        Phone No.: (415) 923-1380
1100 Larkspur Landing Circle #200, Larkspur, CA 94939

DATE: **FEB 13 2018**        Clerk, by     MEREDITH GRIER        , Deputy
*(Fecha)*        CLERK OF THE COURT        *(Secretario)*        *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citatión use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☒ as an individual defendant.
2. ☐ as the person sued under the fictitious name of *(specify)*:

3. ☐ on behalf of *(specify)*:

    under: ☐ CCP 416.10 (corporation)       ☐ CCP 416.60 (minor)
        ☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
        ☐ CCP 416.40 (association or partnership) ☐ CCP 416.90 (authorized person)
        ☐ other *(specify)*:
4. ☒ by personal delivery on *(date)*: 3/1/18

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov
LexisNexis® Automated California Judicial Council Forms

SUM-200(A)

| SHORT TITLE:<br><br>YOKELL v. HYDROTEC, et al. | CASE NUMBER: |
|---|---|

**INSTRUCTIONS FOR USE**

→ This form may be used as an attachment to any summons if space does not permit the listing of all parties on the summons.
→ If this attachment is used, insert the following statement in the plaintiff or defendant box on the summons: "Additional Parties Attachment form is attached."

**List additional parties** *(Check only one box. Use a separate page for each type of party.)*:

☐ Plaintiff   ☒ Defendant   ☐ Cross-Complainant   ☐ Cross-Defendant

PINGORA LOAN SERVICING, LLC, and DOES 1 through 25, inclusive,

Page 2 of 2

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-200(A) [Rev. January 1, 2007]

**ADDITIONAL PARTIES ATTACHMENT**
**Attachment to Summons**

*LexisNexis® Automated California Judicial Council Forms*

**POS-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| DAVID M. ZEFF SB#63289<br>LAW OFFICES OF DAVID M. ZEFF<br>1100 LARKSPUR LANDING CIRCLE, SUITE 200<br>LARKSPUR, CA 94939<br>TELEPHONE NO.: 415 923 1380    FAX NO. (Optional):<br>E-MAIL ADDRESS (Optional):<br>ATTORNEY FOR (Name): PLAINTIFF | |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF    SAN FRANCISCO
STREET ADDRESS:
MAILING ADDRESS:    400 McALLISTER STREET
CITY AND ZIP CODE:    SAN FRANCISCO, CA 94102
BRANCH NAME:

| PLAINTIFF/PETITIONER: MICHAEL YOKELL, | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: HYDROTEC RENEWABLES, INC., et al., | CGC-18-564283 |

| PROOF OF SERVICE OF SUMMONS | Ref. No. or File No.: |
|---|---|

*(Separate proof of service is required for each party served.)*

1. At the time of service I was at least 18 years of age and not a party to this action.
2. I served copies of:
   a. [✔] summons
   b. [✔] complaint
   c. [✔] Alternative Dispute Resolution (ADR) package
   d. [ ] Civil Case Cover Sheet *(served in complex cases only)*
   e. [ ] cross-complaint
   f. [✔] other *(specify documents):* NOTICE TO PLAINTIFF

3. a. Party served *(specify name of party as shown on documents served):*
      LILIANA V. DRAPER

   b. [✔] Person (other than the party in item 3a) served on behalf of an entity or as an authorized agent (and not a person under item 5b on whom substituted service was made) *(specify name and relationship to the party named in item 3a):*
      MICHAEL J. DRAPER, HUSBAND

4. Address where the party was served:
   1227 37TH AVENUE, SAN FRANCISCO, CA 94112
5. I served the party *(check proper box)*
   a. [ ] **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on *(date):*    (2) at *(time):*
   b. [✔] **by substituted service.** On *(date):* 3/1/18    at *(time):* 7:14AM I left the documents listed in item 2 with or in the presence of *(name and title or relationship to person indicated in item 3):*

      (1) [ ] **(business)** a person at least 18 years of age apparently in charge at the office or usual place of business of the person to be served. I informed him or her of the general nature of the papers.

      (2) [✔] **(home)** a competent member of the household (at least 18 years of age) at the dwelling house or usual place of abode of the party. I informed him or her of the general nature of the papers.

      (3) [ ] **(physical address unknown)** a person at least 18 years of age apparently in charge at the usual mailing address of the person to be served, other than a United States Postal Service post office box. I informed him or her of the general nature of the papers.

      (4) [✔] I thereafter mailed (by first-class, postage prepaid) copies of the documents to the person to be served at the place where the copies were left (Code Civ. Proc., § 415.20). I mailed the documents on *(date):* 3/1/18    from *(city):* SAN FRANCISCO    or [ ] a declaration of mailing is attached.

      (5) [✔] I attach a **declaration of diligence** stating actions taken first to attempt personal service.

Page 1 of 2

| PLAINTIFF/PETITIONER: MICHAEL YOKELL, | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: HYDROTEC RENEWABLES, INC., et al., | CGC-18-564283 |

5. c. ☐ **by mail and acknowledgment of receipt of service.** I mailed the documents listed in item 2 to the party, to the address shown in item 4, by first-class mail, postage prepaid,

    (1) on *(date):*                      (2) from *(city):*

    (3) ☐ with two copies of the *Notice and Acknowledgment of Receipt* and a postage-paid return envelope addressed to me. *(Attach completed* Notice and Acknowledgement of Receipt.*)* (Code Civ. Proc., § 415.30.)

    (4) ☐ to an address outside California with return receipt requested. (Code Civ. Proc., § 415.40.)

  d. ☐ **by other means** *(specify means of service and authorizing code section):*

    ☐ Additional page describing service is attached.

6. The "Notice to the Person Served" (on the summons) was completed as follows:
  a. ☑ as an individual defendant.
  b. ☐ as the person sued under the fictitious name of *(specify):*
  c. ☐ as occupant.
  d. ☐ On behalf of *(specify):*
    under the following Code of Civil Procedure section:

    ☐ 416.10 (corporation)             ☐ 415.95 (business organization, form unknown)
    ☐ 416.20 (defunct corporation)        ☐ 416.60 (minor)
    ☐ 416.30 (joint stock company/association)   ☐ 416.70 (ward or conservatee)
    ☐ 416.40 (association or partnership)     ☐ 416.90 (authorized person)
    ☐ 416.50 (public entity)               ☐ 415.46 (occupant)
                                     ☐ other:

7. **Person who served papers**
  a. Name: JOSH MORGON
  b. Address: P.O. BOX 78154, SAN FRANCISCO, CA 94107
  c. Telephone number: 415 278 9978
  d. **The fee** for service was: $
  e. I am:
    (1) ☐ not a registered California process server.
    (2) ☐ exempt from registration under Business and Professions Code section 22350(b).
    (3) ☑ a registered California process server:
      (i) ☑ owner   ☐ employee   ☐ independent contractor.
      (ii) Registration No.: 1330
      (iii) County: SAN FRANCISCO

8. ☑ **I declare** under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

    or

9. ☐ **I am a California sheriff or marshal and** I certify that the foregoing is true and correct.

Date: 3/2/18

JOSH MORGON
(NAME OF PERSON WHO SERVED PAPERS/SHERIFF OR MARSHAL)     ▶     (SIGNATURE )

| Attorney or party without attorney (name and address): | | Telephone No: | For Court Use Only |
|---|---|---|---|
| DAVID M. ZEFF SB#63289 | | (415) 923-1380 | |
| LAW OFFICES OF DAVID M. ZEFF | | | |
| 1100 LARKSPUR LANDING CIRCLE, SUITE 200 | | | |
| LARKSPUR, CA          94939- | | | |
| Attorney for (name):  PLAINTIFF(S) | | | |

Insert name of court and name of judicial district and branch court, if any:
SUPERIOR COURT OF CALIFORNIA
COUNTY OF SAN FRANCISCO

Plaintiff:
MICHAEL YOKELL,

Defendant:
HYDROTEC RENEWABLES, INC., et al.,

| Reference Number:<br>YOKELL | **DECLARATION OF DILIGENCE** | Case Number:<br>CGC-18-564283 |
|---|---|---|

I am and was on the dates herein mentioned, over the age of eighteen and not a party to the within action.  My business address is:  P.O. Box #78154, San Francisco, California  94107.  I received the within process on  February 22, 2018 and that after due and diligent effort I have been unable to effect personal service on the within named
LILIANA V. DRAPER

Residence address   (H): 1227 37TH AVENUE, SAN FRANCISCO, CA 94112

Business address     (B):

Below is a list of dates, times and details regarding efforts to effect service.

2/22/18 @ 7:21PM-NO ANSWER
2/23/18 @ 7:36AM-NOT IN
2/25/18 @ 1:02PM-NO ANSWER
2/27/18 @ 8:04AM-NO ANSWER
2/28/18 @ 7:29AM-NO ANSWER
3/1/18 @ 7:14AM-NOT IN.  SUB SERVED TO MICHAEL J. DRAPER

Declarant:

Josh Morgon


**FreeWheelin'**
ATTORNEY SERVICE
P.O. Box #78154
San Francisco, California  94107
(415) 278-9978

Fee for service:

Registered California process server.
(1) Employee or independent contractor.
(2) Registration No: 2015-1330
(3) County:          San Francisco
(4) Reg. Exp. Date:  March 12, 2019

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:   03/01/18                     Signature:

**DECLARATION OF DILIGENCE**