UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL YOKELL,<br><br>             Plaintiff,<br><br>   v.<br><br>MICHAEL DRAPER, et al.,<br><br>             Defendants. | Case No. 18-cv-02124-JSC<br><br>**ORDER RE: DEFENDANTS MICHAEL<br>DRAPER AND LILIANA DRAPER'S<br>MOTION TO DISMISS**<br><br>Re: Dkt. No. 14 |

Plaintiff Michael D. Yokell alleges that Defendants Michal J. Draper and Liliana V. Draper ("Defendants Draper" or "Michael Draper" or "Liliana Draper") breached a guaranty and defrauded him in a series of investments Plaintiff made in an overseas hydroelectric facility.[1] Defendants Draper now move to dismiss Plaintiff's complaint pursuant to Federal Rules of Civil Procedure 9(b) for failure to plead fraud with particularity, Rule 12(b)(1) for lack of subject matter jurisdiction, and Rule 12(b)(6) for failure to state a claim upon which relief can be granted. (Dkt. No. 14 at 8.)[2] After carefully considering the arguments and briefing submitted, and having had the benefit of oral argument on July 12, 2018, the Court GRANTS in part Defendants' motion to dismiss for the reasons set forth below.

## BACKGROUND

### I.    Complaint Allegations

In early 2015, Plaintiff responded to an advertisement in the Wall Street Journal that sought investors for a hydroelectric facility in the Philippines named Hydrotec Renewables, Inc.

---

[1] Both parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 11 & 13.)
[2] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

("Hydrotec"). (Dkt. No. 1 at ¶ 11.) Defendant Michael Draper, a "registered representative and financial advisor for Equinox Securities, Inc., and a registered representative with [the Financial Industry Regulatory Authority, Inc.,] FINRA," placed the advertisement. (*Id.* at ¶¶ 11, 15.) Plaintiff called the number listed in the advertisement and spoke with Michael Draper. (*Id.* at ¶ 12.) Plaintiff expressed his interest in the investment opportunity to Michael Draper, but Plaintiff stated that he could not invest in Hydrotec without a security interest in the United States. (*Id.* at ¶ 13.) Later that year, Michael Draper called Plaintiff and, as an inducement to invest in Hydrotec, offered Plaintiff a second deed of trust on Michael Draper's home in San Francisco, which he co-owned with his wife, Defendant Liliana Draper. (*Id.* at ¶ 14.)

In or about August 2015, based on Plaintiff's discussions with Michael Draper, Plaintiff agreed to invest in Hydrotec in the form of a $400,000 loan "in exchange for: (1) a .75% equity interest in a Hydrotec project known as the Bunga Project, (2) a Promissory Note signed by Hydrotec," which promised Plaintiff a payment of "an annual interest rate of 12.75," and "(3) a Guaranty from Defendants [Draper]" that "was secured in part by a Deed of Trust on . . . [their] house in San Francisco." (*Id.* at ¶¶ 18-19.) "As part of the Guaranty, the Drapers waived their Homestead rights in their home." (*Id.* at ¶ 18.) Hydrotec forwarded Plaintiff's initial payments to the Draper's joint bank account. (*Id.* at ¶ 21.) Defendants Draper would then deposit those payments "into Plaintiff's account at Charles Schwab & Co., Inc." (*Id.*)

In June 2016, Michael Draper "advised Plaintiff to increase his investment in Hydrotec by $50,000" and "represented to Plaintiff that the additional $50,000 was needed, among other things, to keep Hydrotec's 37 employees on staff." (*Id.* at ¶ 22.) On July 1, 2016, Plaintiff and Defendants Drapers entered into an "Amended and Restated Absolute Secured Guaranty of Payment" ("Amended Guaranty") to reflect Plaintiff's additional investment. (Dkt. No. 1, Exh. 2 at 48.)[3] "The Guaranty was secured by an Amended and Restated Deed of Trust" on the Draper's home in San Francisco. (Dkt. No. 1 at ¶ 26.)

---

[3] A district court may consider "material which is properly submitted as part of the complaint" in ruling on a Rule 12(b)(6) motion. *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1989). Here, Plaintiff attached the Amended Guaranty as an exhibit to his complaint.

In August 2016, Plaintiff invested the additional $50,000 in Hydrotec on the "advice and solicitation" of Michael Draper. (*Id*. at ¶ 23.) Hydrotec granted Plaintiff an additional stake in the Bunga Project as part of his additional investment, raising Plaintiff's ownership interest to 1%. (*Id*.) Plaintiff and Hydrotec executed an Amended and Restated Promissory Note ("Amended Note") to reflect the "new debt obligation in the amount of $450,000." (*Id*. at ¶ 24.)

Under the terms of the Note, Hydrotec "promised to pay Plaintiff the principal sum of $450,000 together with interest on the unpaid principal balance from the date of the Note until paid with interest at the rate of 12.75% per annum on the sum of $400,000 and 14% on the sum of $50,000." (*Id*. at ¶ 25.) The Note also stated that upon default the interest rate would rise to 18%, and Plaintiff had the option of collecting 5% "of the principal amount due." (*Id*.) The unpaid principal and all accrued and unpaid interest were "due and payable in full on March 8, 2017." Hydrotec defaulted on the Note in March 2017, and "Plaintiff gave Hydrotec notice of the default" immediately thereafter on March 9, 2017. (*Id*.) Following Hydrotec's default, Plaintiff made demand upon Defendants Draper "for payment of all sums then due and owing under the Note pursuant to the Guaranty." (*Id*. at ¶ 63.) Defendants Draper did not comply. (*Id*. at ¶ 64.)

Plaintiff commenced an investigation into Michael Draper in April 2017 and discovered that FINRA had fined and suspended him for "willful failure to disclose to FINRA that he had federal and California tax liens of approximately $740,000." (*Id*. at ¶ 31.) Michael Draper had "never disclosed to Plaintiff that he had tax liens in any amount assessed against him." (*Id*. at ¶ 32.) Subsequently, Plaintiff discovered that:

> [Michael] Draper was not registered as a securities agent or broker-dealer with the State of California's Department of Business Oversight at the time he entered into the first Promissory Note or at the time he entered into the Amended and Restated Secured Promissory Note and the Amended and Restated Absolute Secured Guaranty of Payment of Amended and Restated Note.

(*Id*. at ¶ 35.) Furthermore:

> [Michael] Draper was not registered as an investment adviser with the State of California's Department of Business Oversight at the time he entered into the first Promissory Note or at the time he entered into the Amended and Restated Secured Promissory Note and the Amended and Restated Absolute Secured Guaranty of

Payment of Amended and Restated Note.

(*Id*. at ¶ 38.)  Plaintiff also discovered in April 2017 that "the securities issued by Hydrotec in the form of promissory notes, were not registered or qualified with the California Department of Business Oversight or the U.S. Securities and Exchange Commission."  (*Id*. at ¶ 41.)  Before and after making his investments in Hydrotec, Plaintiff did not receive any disclosure documents, "prospectus, private placement memorandum, or subscription agreement relating to his investments."  (*Id*. at ¶ 44.)

## II.     Procedural History

On February 13, 2018, Plaintiff filed a complaint against Defendants Draper and others in Superior Court of the State of California for the City and County of San Francisco, alleging causes of action for: (i) breach of promissory note; (ii) money lent and paid out; (iii) breach of guaranty; (iv) judicial foreclosure; (v) offer and sale of unqualified, non-exempt securities in violation of California Corporations Code ("Code") section 25110; (vi) misrepresentation or omission of material facts in violation of Code section 25401; (vii) unlicensed sale of securities in violation of Code sections 25210 and 25501.5; (viii) financial elder abuse; (ix) fraud; (x) violation of California Investment Advisers Code;[4] and (xi) violation of section 12(a)(2) of The Securities Act of 1933.  (Dkt. No. 1 at 7.)  On April 8, 2018, Defendants Draper removed the case to this Court pursuant to 28 U.S.C. § 1441(c).  (Dkt. No. 1 at 1-3.)  Defendants Draper now move to dismiss the nine causes of action brought against them individually or together.

### LEGAL STANDARD

A Rule 12(b)(6) motion challenges the sufficiency of a complaint as failing to allege "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A facial plausibility standard is not a "probability requirement" but mandates "more than a sheer possibility that a defendant has acted unlawfully."  *Ashcroft v. Iqbal*,

---

[4] Plaintiff's complaint characterizes the eighth cause of action as "violation of California Advisers Code."  There is no such code.  The allegations under the eighth cause of action, however, specify the sections of the California Corporations Code that Plaintiff is alleging Michael Draper violated—sections 25230 and 25235.  Therefore, the Court will address those sections of the California Corporations Code when discussing the eighth cause of action.

United States District Court
Northern District of California

556 U.S. 662, 678 (2009) (internal quotations and citations omitted).  For purposes of ruling on a

Rule 12(b)(6) motion, the court "accept[s] factual allegations in the complaint as true and

construe[s] the pleadings in the light most favorable to the non-moving party."  *Manzarek v. St.*

*Paul Fire & Mar. Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).  "[D]ismissal may be based on

either a lack of a cognizable legal theory or the absence of sufficient facts alleged under a

cognizable legal theory."  *Johnson v. Riverside Healthcare Sys.,* 534 F.3d 1116, 1121 (9th Cir.

2008) (internal quotations and citations omitted); *see also Neitzke v. Williams,* 490 U.S. 319, 326

(1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of

law").  The court must be able to "draw the reasonable inference that the defendant is liable for the

misconduct alleged."  *Iqbal,* 556 U.S. at 663.  "Determining whether a complaint states a plausible

claim for relief . . . [is] a context-specific task that requires the reviewing court to draw on its

judicial experience and common sense."  *Id*. at 663-64.

Causes of action grounded in fraud are subject to Rule 9(b), which requires a plaintiff to

"state with particularity the circumstances constituting fraud or mistake."  Fed. R. Civ. P. 9(b).

Under this heightened pleading standard, "the circumstances constituting the alleged fraud [must]

be specific enough to give defendants notice of the particular misconduct."  *Vess v. Ciba-Geigy*

*Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (internal quotation marks and citation omitted).

Thus, "[a]verments of fraud must be accompanied by the who, what, when, where, and how of the

misconduct charged."  *Id*. (internal quotation marks and citation omitted).  In other words, when

alleging fraudulent statements or omissions of material fact, a plaintiff must not only identify the

statements or omissions, but also "set forth an explanation as to why the statement or omission

complained of was false or misleading."  *In re Rigel Pharm., Inc. Sec. Litig.*, 697 F.3d 869, 876

(9th Cir. 2012).  However, "[m]alice, intent, knowledge, and other conditions of a person's mind

may be averred generally."  Fed. R. Civ. P. 9(b).

## DISCUSSION

Defendants Draper move to dismiss the complaint with prejudice as to each of the nine

causes of action brought against them.  Specifically, they seek dismissal of: (1) the third cause of

action for breach of guaranty; (2) the fourth cause of action for judicial foreclosure; (3) the fifth

5

cause of action for offer and sale of unqualified, non-exempt securities in violation of Cal. Corp. Code section 25110; (4) the sixth cause of action for misrepresentation or omission of material facts in violation of Cal. Corp. Code section 25401; (5) the seventh cause of action for unlicensed sale of securities in violation of Cal. Corp. Code sections 25210 and 25501.5; (6) the eighth cause of action for financial elder abuse; (7) the ninth cause of action for fraud; (8) the tenth cause of action for violation of California Investment Advisers Code; and (9) the eleventh cause of action for violation of section 12(a)(2) of The Securities Act of 1933. Defendants Draper also move to dismiss Plaintiff's prayer for relief on the third and fourth causes of action. The Court addresses each cause of action in turn.

### 1. Breach of Guaranty

California courts treat a breach of guaranty cause of action like a breach of contract claim. *Gerristen v. Warner Bros. Entertainment, Inc.*, 112 F. Supp. 3d 1011, 1035 (C.D. Cal. 2015); *see also MRW, Inc. v. Big-O Tires, LLC* No. S-08-1732, 2009 WL 3368438 (E.D. Cal. Oct. 16, 2009) ("An action for breach of guaranty is a species of claim for breach of contract.") (citing *Torrey Pines Bank v. Superior Court*, 216 Cal. App. 3d 813 (1989)). To establish a breach of guaranty cause of action, a plaintiff must show that: "(1) there is a valid guaranty, (2) the borrower has defaulted, and (3) the guarantor failed to perform under the guaranty." *Gray1 CPB, LLC v. Kolokotronis*, 202 Cal. App. 4th 480, 486 (Ct. App. 2011).

Plaintiff's complaint states a plausible claim for breach of guaranty. First, the Amended Guaranty identifies the "Lender" as Plaintiff and the "Guarantor" as Defendants Draper. (Dkt. No. 1, Exh. 2 at 48.) The Amended Guaranty states, in part, that "[f]or value received," the Guarantor "guarantees absolutely and unconditionally the payment to the Lender of [the Amended Note] pursuant to its terms "in the principal amount of Four Hundred Fifty Thousand Dollars." (*Id.*) The Amended Guaranty includes the signatures of Defendants Draper and it was notarized. Thus, a valid guaranty exists. Second, Hydrotec defaulted on the Amended Note in March 2017. Third, upon notice of Hydrotec's default, Defendants Draper did not satisfy Hydrotec's obligations to Plaintiff pursuant to the Amended Guaranty.

Defendants Draper seek to dismiss this cause of action because Plaintiff failed to identify

6

in the complaint the consideration Defendants Draper received for their guaranty. That argument has no merit. The Court need only look to the face of the Amended Guaranty to find consideration. The Amended Guaranty states, in pertinent part, "*For value received*, the Guarantor absolutely guarantees payment to Lender, at maturity, of the [Amended Note] executed by Borrower." (*Id*.) (emphasis added). This language imparts consideration. *See Egenberger v. Neuman*, 41 Cal. App. 134, 136 (Ct. App. 1919) (finding consideration sufficient "to entitle the plaintiff to recover as on a contract" where the instrument at issue "purports on its face to be for value received").

Defendants Draper further argue that the Amended Guaranty is unenforceable because the Note it guarantees is usurious based on the Note's terms; specifically, the per annum interest rate of 18% in the event of default. This argument is similarly unavailing. *See Blue Growth Holdings Ltd. v. Mainstreet Ltd. Ventures, LLC*, No. CV 13-1452 CRB, 2013 WL 4758009, at *2 (N.D. Cal. Sept. 4, 2013) (noting that a "Borrower is still liable for the principal on a usurious loan," and where the Borrower breaches a promissory note, the "Guarantor's obligations [are] triggered."). Where a breach of guaranty has occurred, "the usury defense concerns the amount and not the existence of damages." *Id*. (citing *Strike v. Trans-West Discount Corp.*, 92 Cal. App. 3d 735, 744 (Ct. App. 1979)); *see also In re Dominelli*, 820 F.2d 313, 318 n.3 (9th Cir. 1987) ("Under California law, if a transaction is usurious, generally the interest provision of the loan is void, but the principal of the loan is unaffected.") (citing *Rochester Capital Leasing Corp. v. K & L Litho Corp.*, 13 Cal. App. 3d 697, 831 (1970) ("While the principal of an usurious transaction is recoverable, no interest whatsoever can be claimed by the usurious lender.")).

The Court denies Defendants' motion to dismiss the third cause of action for breach of guaranty. Accordingly, the Court also denies Defendants' motion to dismiss the prayer for relief for breach of guaranty.

### 2. Judicial Foreclosure

Plaintiff seeks to foreclose on the Deed of Trust for Defendants' house in San Francisco "executed and delivered" to him by Defendants Draper in July 2016 pursuant to the Amended

Guaranty.[5]  (Dkt. No. 1 at ¶ 73.)  Defendants Draper seek to dismiss this cause of action pursuant to (a) Rule 12(b)(1) because the Court lacks subject matter jurisdiction, and (b) Rule 12(b)(6) because Plaintiff fails to adequately state a claim for relief.  Both arguments are premised on Defendants' insistence that California Civil Code section 2966 applies to the transaction at issue. Defendants are wrong.

California Civil Code section 2966 provides, in pertinent part, that it applies only to "balloon payment notes when the term for repayment is for a period in excess of one year."  Here, the face of the Note shows that it was effective June 15, 2016, with a maturity date of March 8, 2017—a term of repayment *less* than one year.  (Dkt. No. 1, Exh. 1 at 39.)  Thus, Defendants have not shown that California Civil Code section 2966 applies; their motion to dismiss the judicial foreclosure cause of action must be denied.  Accordingly, the Court also denies Defendants' motion to dismiss the prayer for relief for judicial foreclosure.

### 3. Offer or Sale of Unqualified, Nonexempt Securities in Violation of California Corporations Code Section 25110

California Corporations Code section 25110 prohibits the offer or sale of a security in an issuer transaction unless the sale has been qualified under the Code or is "exempted or not subject to qualification" under the Code.  Plaintiff alleges that he discovered in April 2017 that the instruments issued by Hydrotec as promissory notes were not registered or qualified in accordance with the Code or with the U.S. Securities and Exchange Commission.  Defendants Draper seek to dismiss this cause of action on the grounds that the promissory note at issue is not a security as a matter of law.

California Corporations Code section 25019 broadly defines a "security" as any note; stock; treasury stock . . . bond; debenture; evidence of indebtedness; certificate of interest or

---

[5] The complaint states that "[o]n July 1, 2017," Defendants Draper "executed and delivered the Deed of Trust securing Hydrotec's payment of the NOTE to Plaintiff, which Deed of Trust encumbered the property described therein, then owned by and in possession of the Drapers and which was recorded on July 6, 2016, in the Official Record Book of the San Francisco Assessor-Recorder as DOC 2016-K282840-00."  (Dkt. No. 1 at ¶ 73.)  The reference to "2017" appears to be in error.  The Amended Guaranty that is secured by the Deed of Trust was executed by Defendants Draper and notarized on July 1, 2016.

participation in any profit-sharing agreement; . . . investment contract; . . . or, in general, any

interest or instrument commonly known as a 'security.'" "The California Supreme Court has

recognized that the federal definition of a security served as the model for the definition in

Corporations Code section 25019 and decisions interpreting the federal definition are helpful in

resolving issues presented under state law."[6] *People v. Black*, 8 Cal. App. 5th 889, 905 (Ct. App.

2017).

The list defining a security is expansive, however, an instrument need not "come[ ] within

the literal language of the definition." *People v. Figueroa*, 41 Cal. 3d 714, 733 (1986). Courts

must look instead "to the substance of the transaction to determine whether protection of the

securities laws is necessary." *Black*, 8 Cal. App. 5th at 909 (Ct. App. 2017). In doing so, courts

must evaluate the "character the instrument is given by the terms of the offer, the plan of

distribution, and the economic inducements held out to the prospect." *Marine Bank v. Weaver*,

455 U.S. 551, 556 (1982) (internal quotation marks and citations omitted).

Courts evaluating alleged securities under California law rely on two tests: "the risk capital

test and the federal or *Howey* test." *Id.* at 900. "It is generally accepted that both the risk capital

and federal tests may be applied, either separately or together; a transaction is a security if it

satisfies either test." *Id.* The United States Supreme Court has outlined a separate test, however,

to determine whether a promissory note constitutes a security: "the family resemblance test."

*Reves v. Ernst & Young*, 494 U.S. 56, 64-65 (1990). Because the instrument at issue is a

promissory note, the Court will first conduct its analysis under the *Reves* test.

### A. The Note and the Family Resemblance Test

The family resemblance test "begin[s] with the presumption that every note is a security."

*Id.* at 65. That presumption is rebutted if the note falls within a list of seven families of

"commonly denominated 'notes' that nonetheless fall without the 'security' category." *Id.* As

relevant here, that list includes notes secured by a mortgage on a home. *Id.* If the note does not

---

[6] The federal definition of a "security" is similarly broad, and as relevant here, includes "any note, stock, treasury stock, bond, debenture, certificate of interest in any profit-sharing agreement or . . . investment contract . . . ." 15 U.S.C. § 78c(a)(10).

fall within that list of families, a court must consider four factors to determine whether the note constitutes a "security": "(1) the motivation for entering the transaction; (2) the plan of distribution [of the instrument]; (3) the reasonable expectations of the investing public; and (4) whether there are any risk reducing factors that would make application of the securities laws unnecessary." *SEC v. R.G. Reynolds Enter., Inc.*, 952 F.2d 1125, 1131 (9th Cir. 1991). Although the Note here superficially resembles the family of notes secured by a mortgage on a home, the complaint does not allege that Plaintiff is the mortgagor of the Draper's home. Furthermore, the Note also references a "separate agreement" reflecting the purchase of an "equity ownership and revenue interest." (Dkt. No. 1, Exh. 1 at 39.) Therefore, the Court must consider the four *Reves* factors.

### i.    Motivation for Transaction

The first factor "examine[s] the transaction to assess the motivations that would prompt a reasonable seller and buyer to enter into it." *Reves*, 494 U.S. at 66. A note reflects a security "[i]f the seller's purpose is to raise money for the general use of a business enterprise or to finance substantial investments and the buyer is interested primarily in the profit the note is expected to generate." *Id*. Conversely, "[i]f the note is exchanged to facilitate the purchase and sale of a minor asset or consumer good, to correct the seller's cash-flow difficulties, or to advance some other commercial or consumer purpose . . . the note is less sensibly described as a 'security.'" *Id*.

Here, Plaintiff's investment proceeds would be used to purchase specific equipment for the Bunga Project.[7] The purchase of such equipment supports a plausible inference that it constituted a substantial investment for Hydrotec and not merely the purchase of "a minor asset or consumer good." And although the fixed interest rates coupled with the quick maturity date of the Note more closely resemble a short-term loan, Plaintiff alleges that he received an equity and revenue interest in the Bunga Project in return for his investments. The terms of both the Note and the Amended Guaranty support Plaintiff's allegations, and reference an agreement granting an "equity ownership and revenue interest" in the "Bunga SPV." (Dkt. No. 1, Exh. 1 at 39, 41, 48.) Based on the undisputed terms of the Note itself and Plaintiff's allegations, it is plausible to infer that

---

[7] According to the terms of the Note, the purpose of the Bunga Project was "to build a pilot hydro system generating 120kwh in the Philippines." (Dkt. No. 1, Exh. 1 at 39.)

10

Plaintiff was primarily interested in the profits the Note was expected to generate through his equity and ownership interest in the Bunga Project.

### ii.      Plan of Distribution

This factor considers whether the promissory note was "offered and sold to a broad segment of the public." Here, the transaction in 2015 clearly had the initial appearance of an offer and sale of a security (i.e., an advertisement to the general public in the Wall Street Journal from a registered representative of a brokerage firm (Equinox Securities, Inc.) soliciting an investment opportunity). The negotiations that resulted after that initial offer, however, suggest a more personalized offer and sale.

Early in 2015, Plaintiff responded to the advertisement placed by Michael Draper and dictated certain terms by requiring security for his investment. Later that year, Michael Draper called Plaintiff and "as an inducement to invest," complied with Plaintiff's request for a secured transaction by offering Plaintiff "a second deed of trust on a San Francisco home" owned by Defendants Draper. (Dkt. No. 1 at 14.) Plaintiff agreed and invested $400,000.

This type of personalized, unique, and secured transaction does not generally reflect the purchase of a security. *See e.g., Marine Bank*, 455 U.S. at 560 (noting that "a security is an instrument in which there is 'common trading,'" and finding that the "unique agreement [at issue], negotiated one-on-one by the parties," was not indicative of a security); *Black*, 8 Cal. App. 5th at 906 ("[T]he provision binding [defendant's] separate property for purposes of enforcing payment on the notes, inserted an element of redress that would be unlikely to fall within the ordinary concept of a security.") (internal quotation marks and citation omitted). Furthermore, the pleadings do not allege that the unique agreement between Plaintiff, Hydrotec, and Michael Draper could have been, or was offered to the general public.[8]

The second transaction also does not give rise to a plausible inference that the Note was offered and sold to the public; instead, it supports the exact opposite inference—a one-on-one, personalized transaction. In June 2016, Hydrotec and Michael Draper solicited Plaintiff directly

---

[8] The pleadings do not discuss the involvement of additional investors.

for an additional $50,000, which, according to the terms of the Note, Hydrotec would use to purchase specific hydroelectric equipment. *See Marine Bank*, 455 U.S. at 559 (noting that "[t]he unusual instruments found to constitute securities in prior cases involved offers to a number of potential investors, not a private transaction as in this case."). There is no allegation that Hydrotec or Michael Draper offered similar terms to the general public, and the highly personalized nature of the collateral (a deed of trust in the Draper's home) suggests that they could not have. Furthermore, Plaintiff never received a prospectus or subscription agreement relating to any payment made to Hydrotec. *See id.* at 560 (noting that defendant "distributed no prospectus to [plaintiff] or to other potential investors, and the unique agreement was not designed to be traded publicly."); *see also Black*, 8 Cal. App. 5th at 906 (finding that promissory note did not constitute a security where, in part, "[t]here was no prospectus or indication that the arrangement with [plaintiff] could have been traded publicly or even offered more widely.") (internal quotation marks and citation omitted).

Viewing the two transactions as a whole, however, and construing the pleadings in the light most favorable to Plaintiff, the Court cannot ignore that Plaintiff's investment in Hydrotec was initially solicited by way of a public offer. Based on Michael Draper's advertisement in the Wall Street Journal, it is plausible to infer that Plaintiff was not the only investor offered and sold a promissory note reflecting an equity and ownership interest in the Bunga Project.

### iii.    Expectations of the Investing Public

Under this factor, a note constitutes a security if the "reasonable expectations of the investing public" would view the note as a security, "even where an economic analysis of the circumstances of the particular transaction might suggest that the instruments are not 'securities' as used in that transaction." *Reves*, 494 U.S. at 66. Given that Plaintiff received equity and revenue interests in a business venture in exchange for his investments—a classic hallmark of a security—a reasonable investor would likely view the Note as a "security," even though the circumstances of the specific transactions at issue could arguably suggest otherwise.

### iv.    Risk Reducing Factors

The Court must finally consider whether there is a risk-reducing factor, such as collateral,

12

insurance, or a regulatory safeguard outside of the securities laws, suggesting that the Note is not a security. *Id*. at 69. Here, the Note was secured by the Amended Guaranty, which was itself secured by tangible collateral—a deed of trust. *See id*. (finding "no risk-reducing factor" indicating that notes at issue were not securities where notes were "uncollateralized and uninsured."); *see also Black*, 8 Cal. App. 5th at 906 ("[T]he provision binding [defendant's] separate property for purposes of enforcing payment on the notes, inserted an element of redress that would be unlikely to fall within the ordinary concept of a security.") (internal quotation marks and citation omitted). Plaintiff alleges, however, that the collateral securing his investments was Defendants Drapers' *second* deed of trust on their home. Plaintiff also alleges that Michael Draper was subject to tax liens of $740,000. Thus, the complaint gives rise to a plausible inference that the deed of trust securing Plaintiff's investments was not adequate to cover his $450,000 investment in the event of default.

In examining the *Reves* factors and viewing the transactions as a whole, and drawing all inferences in favor of the Plaintiff, the Court cannot as a matter of law state that the Note does not constitute a security. Thus, the Court denies Defendants' motion to dismiss the fifth cause of action for the offer and sale of unqualified, non-exempt securities in violation of California Corporations Code section 25110.

### 4. Misrepresentation or Omission of Material Facts in Violation of California Corporations Code Section 25401

California Corporations Code section 25401 prohibits the use of "any oral or written communication" that "includes an untrue statement of material fact" or material omission in the offer or sale of securities. To state a cause of action under section 25401, Plaintiff "must allege that there was a sale or purchase of stock in California by fraudulent untrue statements or by omitting material facts that would by omission make the statements misleading." *MTC Electronic Tech. Co., Ltd. v. Leung*, 876 F. Supp. 1143, 1147 (C.D. Cal. 1995). Because this cause of action is "grounded in fraud," Plaintiff must satisfy the heightened pleading standard under Rule 9(b). *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) ("A plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim.

In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading . . . as a whole must satisfy the particularity requirement of Rule 9(b).").  Plaintiff fails to do so.

Plaintiff alleges that Michael Draper offered and sold him securities in California, and in the process of doing so, made misrepresentations and omitted material facts "necessary to make the statements made, in light of the circumstances[,] . . . not misleading."  (Dkt. No. 1 at ¶ 100.) Specifically, Plaintiff alleges that Michael Draper failed to disclose that: (1) he had been fined by and suspended from FINRA "for a period of time" for "willful failure to disclose to FINRA that he had federal and California tax liens of approximately $740,000"; (2) he was not a registered securities agent or broker-dealer, or investment adviser with the State of California; (3) he did not disclose the financial condition and operating history of Hydrotec, the risks associated with investing in Hydrotec, or that "the [Hydrotec] securities were not registered or qualified under California or federal law."  (*Id*. at ¶ 48.)  Plaintiff does not, however, allege that Michael Draper had a duty to disclose any of the alleged material omissions to Plaintiff in the course of their dealings.  At oral argument he explained that Michael Draper served as Plaintiff's investment advisor and that gave rise to a duty, but as described below the complaint's allegations do not plausibly support such an inference.

As to Michael Draper's alleged misrepresentations, Plaintiff alleges that Michael Draper "guaranteed" that Plaintiff would recoup his investment, and "misrepresented that Plaintiff would receive regular monthly interest payments" and "would receive a return on his investment principal at the end of the investment term."  (*Id*. at ¶ 101.)  Plaintiff fails, however, to explain why those statements were false or misleading at the time they were made.  *See In re Rigel*, 697 F.3d at 876 (noting that a plaintiff must not only identify the alleged false statements or omissions, but also "set forth an explanation as to why the statement or omission complained of was false or misleading.").  Instead, Plaintiff provides wholly conclusory statements that do not meet the heightened pleading standard under Rule 9(b).

Accordingly, the Court grants Defendants' motion to dismiss the sixth cause of action for misrepresentation or omission of material facts in violation of section 25401.

**5. Unlicensed Sale of Securities in Violation of California Corporations Code Sections 25210 and 25501.5**

California Corporations Code section 25501.5 provides a private right of action for rescission or damages stemming from a violation of California Corporations Code section 25210, which requires broker-dealers to obtain certification from the state before engaging in securities transactions. Section 25501.5 provides, in part:

> A person who purchases a security from or sells a security to a broker-dealer that is required to be licensed and has not, at the time of sale or purchase, applied for and secured from the commissioner a certificate [as required under section 25210], that is in effect at the time of the sale or purchase authorizing that broker-dealer to act in that capacity, may bring an action [under this section] . . . .

Plaintiff alleges that "during the period at issue," Michael Draper "violated Section 25210 of the Code because he did not have . . . a broker-dealer certificate from the Commission of the California Department of Business Oversight." (Dkt. No. 1 at ¶ 114.) Plaintiff also alleges, however, that Michael Draper was "a registered representative and financial advisor for Equinox Securities, Inc., and a registered representative with FINRA" at the time of his communications with Plaintiff. (Dkt. No. 1 at ¶ 15.) At this stage, the Court need not reconcile what appear to be the somewhat conflicting statements in the complaint as to Michael Draper's status as a broker-dealer. Based on the allegations, it is plausible to infer that Michael Draper sold Plaintiff Hydrotec securities in 2015 and 2016, and at that time he was not licensed to do so in California.

Defendants' argue that dismissal is warranted because: (1) the Note was not a security under California law, and (2) "Plaintiff fails to plead facts to support that Michael Draper had any interest in Hydrotec or received any compensation from Hydrotec or Plaintiff." (Dkt. No. 14 at 25.) Both arguments fail.

First, as explained above, drawing all reasonable inferences in Plaintiff's favor, the Court cannot conclude as a matter of law that the Note does not constitute a security under the *Reves* test. Second, Plaintiff need not allege how or from whom Michael Draper received compensation. Under California law, "if an individual in the course of his business participates in negotiations that involve the purchase or sale of securities . . . he is effecting or attempting to effect a transaction . . . in such securities and is a 'broker-dealer.'" *Nationwide Inv. Corp. v. California*

*Funeral Serv., Inc.*, 40 Cal. App. 3d 494, 502 (Ct. App. 1974). Here, Plaintiff alleges that Michael Draper was a registered representative for Equinox Securities, Inc., "at the time of his conversations and communications with Plaintiff in the summer of 2016." (Dkt. No. 1 ¶ 15.) Plaintiff further alleges that he was solicited by and negotiated with Michael Draper prior to investing in Hydrotec. Thus, the complaint adequately alleges that Michael Draper negotiated the purchase or sale of a security in the course of his business, and the transaction falls within the scope of California Corporations Code section 25210.

Accordingly, the Court denies Defendants' motion to dismiss the seventh cause of action for unlicensed sale of securities in violation of California Corporations Code sections 25210 and 25501.5.

### 6. Financial Elder Abuse

Pursuant to California Welfare and Institutions Code section 15610.30, financial elder abuse occurs when an individual:

> (1) Takes, secretes, appropriates, obtains, or retains real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both,

> (2) Assists in taking, secreting, appropriating, obtaining, or retaining real or personal property of an elder or dependent adult for a wrongful use or with intent to defraud, or both, or

> (3) Takes, secretes, appropriates, obtains, or retains, or assists in taking, secreting, appropriating, obtaining, or retaining, real or personal property of an elder or dependent adult by undue influence.

Cal. Welf. & Inst. Code § 15610.30(a). The statute defines "wrongful use" as taking property when the defendant "knew or should have known that his conduct is likely to be harmful to the elder or dependent adult." Cal. Welf. & Inst. Code § 15610.30(b) Liability under the statute also exists "when an elder or dependent adult is deprived of any property right, including by means of an agreement, donative transfer, or testamentary bequest, regardless of whether the property is held directly or by a representative of an elder or dependent adult." Cal. Welf. & Inst. Code § 15610.30(c). An elder is defined as an individual over the age of 65. Cal. Welf. & Inst. Code § 15610.27.

Plaintiff was 65 at the time of his transactions with Michael Draper. To allege financial

16

elder abuse, Plaintiff must plead that Michael Draper took, obtained, or retained (or assisted in taking, obtaining, or retaining) Plaintiff's property for wrongful use, or with the intent to defraud, or by undue influence. Wrongful use can be shown where an elder has a contractual right to property, defendant breaches that contract, and defendant "actually knows that it is engaging in a harmful breach, or reasonably should be aware of the harmful breach." *Paslay v. State Farm General Ins. Co.*, 248 Cal. App. 4th 639, 658 (Ct. App. 2016).

Here, Plaintiff alleges that Michael Draper assisted Hydrotec in obtaining $450,000 from Plaintiff. Pursuant to the terms of the Note and the Amended Guaranty, Plaintiff had a contractual right to full payment—from either Hydrotec or Defendants Draper—of the unpaid principal and any outstanding interest on March 8, 2017. Upon Hydrotec's default, Defendants Draper were obligated under the Amended Guaranty to honor Plaintiff's contractual right to those funds.

Plaintiff has adequately alleged that Defendants Draper breached the Amended Guaranty. By breaching the agreement, Michael Draper retained property (or assisted Hydrotec in retaining property) to which Plaintiff had a contractual right. Given the amount of money involved, and Plaintiff's request to Defendants Draper to honor the Amended Guaranty, it is plausible to infer that Michael Draper knew or reasonably should have known that he was engaging in a harmful breach.

Defendants Draper seek to dismiss this cause of action because (a) Plaintiff fails to plead fraudulent intent with particularity, and (b) Plaintiff fails to allege how Michael Draper impermissibly retained Plaintiff's personal property. The Court rejects both arguments. First, Plaintiff need not plead fraudulent intent; allegations of wrongful use are sufficient. *See* Cal. Welf. & Inst. Code § 15610.30(a) (a plaintiff must adequately plead property retained "for a wrongful use *or* with intent to defraud, or both") (emphasis added). Second, to state a cause of action for financial elder abuse, Plaintiff need only plead that: (1) Michael Draper retained or assisted Hydrotec in retaining property to which Plaintiff had a contractual right, (2) Michael Draper breached that contract, and (3) Michael Draper knew or "reasonably should [have] been aware that he was engaging in a harmful breach." *Paslay*, 248 Cal. App. 4th at 658. Plaintiff has done so.

1    The Court denies Defendants' motion to dismiss the eighth cause of action for financial

2    elder abuse.

3        **7.    Fraud**

4        To state a cause of action for fraud under California law, a plaintiff must allege: (1) a

5    misrepresentation or omission of material fact; (2) knowledge of falsity; (3) intent to defraud; (4)

6    justifiable reliance; and (5) resulting damage.  *Gil v. Bank of America, Nat. Ass'n*, 138 Cal. App.

7    4th 1371, 1381 (Ct. App. 2006).

8        Plaintiff alleges that Michael Draper engaged in a scheme to defraud him through

9    misrepresentations and omissions of material fact related to Plaintiff's "loan[s] and/or

10   investment[s]" in Hydrotec.  Defendant seeks to dismiss this claim because Plaintiff has not

11   pleaded fraud with particularity.  The Court agrees.

12       Plaintiff's fraud claim is based on the same alleged misrepresentations and omissions

13   discussed under his cause of action for misrepresentation or omission of material facts in violation

14   of Section 25401, and it fails for the same reasons.

15       Accordingly, the Court grants Defendants' motion to dismiss the ninth cause of action for

16   fraud.  Plaintiff is granted leave to amend the complaint as to this cause of action.

17       **8.    Violation of California Corporations Code Sections 25230 and 25235**

18       Plaintiff's tenth cause of action alleges violations of "California Investment Advisers

19   Code" under California Corporations Code sections 25230 (acting as an investment adviser

20   without a license) and 25235 (engaging in fraudulent conduct while acting as an investment

21   adviser).  California Code of Civil Procedure section 1029.8 provides a private right of action for

22   persons harmed by "[u]nlicensed persons who cause injury or damage . . . as a result of providing

23   goods or performing services for which a license is required."

24       Defendants Draper seek to dismiss this cause of action because (a) Plaintiff fails to allege

25   that Michael Draper received any compensation for his "fund raising" services from either

26   Hydrotec or Plaintiff and therefore Michael Draper is not an investment adviser as defined under

27   California Corporations Code section 25009, and (b) Plaintiff fails to plead fraudulent conduct

28   with particularity to state a cause of action for violation of section 25235.

### a. California Corporations Code section 25230

California Corporations Code section 25230 provides, in pertinent part:

> It is unlawful for any investment adviser to conduct business as an investment adviser in this state unless the investment adviser has first applied for and secured from the commissioner a certificate, then in effect, authorizing the investment adviser to do so or unless the investment adviser is exempted by the provisions of Chapter 1 (commencing with Section 25200) of this part or unless the investment adviser is subject to Section 25230.1.

The Code defines an "investment adviser" as:

> [A]ny person who, for compensation, engages in the business of advising others, either directly or through publications or writings, as to the value of securities or as to the advisability of investing in, purchasing or selling securities, or who, for compensation and as a part of a regular business, publishes analyses or reports concerning securities.

Cal. Corp. Code § 25009. The definition also includes "any person who uses the title 'financial planner'" in the course of the same conduct. *Id*. Plaintiff alleges that Michael Draper was "a registered representative and financial advisor for Equinox Securities, Inc., and a registered representative with FINRA" at the time of his communications with Plaintiff. (Dkt. No. 1 at ¶ 15.) Plaintiff further alleges that Michael Draper "served as a financial adviser and securities agent for Plaintiff in connection with" the Hydrotec transactions, and Plaintiff relied upon Michael Draper's "advice and information in making his decision to lend money to Hydrotec." (*Id*. at ¶ 17.) Plaintiff discovered in April 2017 that Michael Draper "was not registered as an investment adviser with the State of California's department of Business Oversight at the time" of the [transactions at issue]." (*Id*. at ¶ 38.)

Nonetheless, as Defendants Draper point out, Plaintiff does not allege that Michael Draper provided him with investment advice for compensation; indeed, the complaint is vague as to what advice, if any, Michael Draper gave Plaintiff. Plaintiff's opposition does not address this argument. (Dkt. No. 21 at 23-24.) Accordingly, Defendants' motion to dismiss the California Corporations Code section 25230 cause of action is granted.

### b. California Corporations Code section 25235

Under California Corporations Code section 25235(d), it is unlawful for an investment

19

adviser to "engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative." Plaintiff alleges that Michael Draper, in the course of his dealings as Plaintiff's investment adviser, engaged in fraudulent conduct prohibited under Section 25235. Plaintiff further alleges that Michael Draper's "actions caused Plaintiff to lose the principal of his investments in Hydrotec . . . and the interest payments that [Michael Draper] promised." (Dkt. No. 1 at 31.)

As with Plaintiff's causes of action for misrepresentation or omission of material facts in violation of Section 25401 and fraud, this cause of action must satisfy the heightened pleading standard under Rule 9(b) because it is based on the same allegations underlying those causes of action and is therefore "grounded in fraud." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009). This cause of action is similarly deficient for the reasons stated above and also because Plaintiff has not plausibly pleaded that Michael Draper was acting as Plaintiff's investment advisor.

Accordingly, the Court grants Defendants' motion to dismiss the tenth cause of action for violation of California Corporations Code section 25235.

### 9. Violation of Section 12(a)(2) of The Securities Act of 1933

Section 12(a)(2) of the Securities Act of 1933 "imposes civil liability on any person for use of any instrumentality of interstate commerce to offer or sell securities by means of a prospectus or oral communication that includes 'an untrue statement of a material fact or omits to state a material fact necessary in order to make the statements, in the light of the circumstances under which they are made, not misleading." *In re Daou Systems, Inc.*, 411 F.3d 1006, 1028-29 (9th Cir. 2005) (quoting 15 U.S.C. § 77l(a)(2)). To state a claim under section 12(a)(2), "a plaintiff must allege that the defendants did more than simply urge another to purchase a security; rather, the plaintiff must show that the defendants solicited purchase of the securities for their own financial gain" or the financial gain "of the securities owner." *Id*. at 1029.

"[F]raud is not an element of a Section 12(a)(2) claim"; instead, the claim "must satisfy Rule 9(b) only to the extent that the factual allegations sound in fraud." *In re Charles Schwab Corp. Sec. Litig.*, 257 F.R.D. 534, 548 (N.D. Cal. 2009). Here, Plaintiff "expressly exclude[s] and

disclaim[s] any allegation that could be construed as alleging fraud or intentional or reckless misconduct," and bases this cause of action "solely on claims of strict liability and/or negligence under the Securities Act." (Dkt. No. 1 at ¶ 152.) Specifically, Plaintiff alleges that Michael Draper "actively solicited the sale of Hydrotec Promissory Notes to serve his own financial interests," and sold Plaintiff the notes through misleading statements and omissions of material fact that Michael Draper, "in the exercise of reasonable care should have known were false." (*Id.* at ¶¶ 154, 156.)

Despite Plaintiff's efforts to segregate this claim from the conduct underlying the causes of action grounded in fraud, the Court is unconvinced. *See In re Stac Electronics Sec. Litig.*, 89 F.3d 1399, 1405 n.2 (9th Cir. 1996) (finding plaintiffs "nominal efforts" in "specifically disclaim[ing] any allegations of fraud" with respect to its Section 11 of the Securities Act of 1933 claim "unconvincing where the gravamen of the complaint is plainly fraud and no effort is made to show any other basis for the claims"); *see also In re Charles Schwab*, 257 F.R.D. at 546 (noting that the Ninth Circuit has applied Rule 9(b) to 1933 Securities Act claims "where the plaintiff pled both fraud and non-fraud bases for liability based on the same course of conduct."). Here, Plaintiff fails to plead a separate course of conduct and instead simply "exclude[s] and disclaim[s]" the allegations grounded in fraud. The Court is left with nothing to adequately distinguish this purported non-fraud cause of action from Plaintiff's claims grounded in fraud. Instead, the conduct underlying Plaintiff's Section 12(a)(2) claim is *also* alleged to be fraudulent under separate causes of action. Thus, Rule 9(b) applies because the causes of action are all based on the same conduct and grounded in fraud.

As with Plaintiff's other causes of action grounded in fraud, his Section 12(a)(2) claim fails to meet the particularity requirements of Rule 9(b). Accordingly, the Court grants Defendants' motion to dismiss the eleventh cause of action for violation of Section 12(a)(2) of The Securities Act of 1933. Plaintiff is granted leave to amend the complaint as to this claim.

## CONCLUSION

For the reasons set forth above, Defendants' motion to dismiss is GRANTED without prejudice as to the causes of action for: (i) misrepresentation or omission of material facts in

violation of California Corporations Code section 25401; (ii) fraud; (v) violation of California Corporations Code sections 25230 and 25235; and (vi) violation of section 12(a)(2) of the Securities Act of 1933.  The Court grants Plaintiff leave to amend as to those claims.  Defendants' motion to dismiss is DENIED as to the remaining causes of action.

Plaintiff shall file his amended complaint, if any, within 30 days of the date of this Order. As discussed at oral argument, Defendants need not respond to the amended complaint, whether by answer or motion to dismiss, pending completion of the ENE proceedings.  However, the parties should understand each other's positions going into the ENE.  Accordingly, Defendants should be prepared to describe in detail their proposed counterclaims to the evaluator and Plaintiff in any ENE-related submissions.  In addition, the parties shall exchange initial disclosures within 40 days of the date of this Order, and shall work cooperatively and informally to ensure that each side has sufficient information to engage in ENE and a related mediation.  If there are any issues in this regard, the parties shall contact the Court's Deputy Clerk to schedule a telephone conference with the Court.

**IT IS SO ORDERED.**

Dated:  July 13, 2018

JACQUELINE SCOTT CORLEY
United States Magistrate Judge